## NORTON v. THE STATE.

Since the act of the Gen. Assembly, (Rev. co. p. 179, s. 42,) if A. hires a horse, and either at the time he gets possession of him, or afterwards, conceives the design of stealing him, and carries him away with that design, he is guilty of larceny.

*Risque for pltf. in error.*

Two questions present themselves in this case. 1. Does the evidence amount to the crime of larceny, and justify a conviction under the first instruction of the court? or does it show a mere breach of trust? 2. Is the second instruction given by the court below warranted by law? 1st, larceny is defined by most writers on criminal law to be "the felonious taking, stealing and carrying away of the personal goods of another." A felonious intent, is the very gist or essence of the crime of larceny, and must exist at the very moment the party gets possession of the property. "The felonious intent is essential to the offence; and in order to make it felony, the intent to steal ought to be at the time when the party first gets possession of the goods."—2 vol. East's P. C. 655. In the case of John Pear—2nd vol. East's P. C. 688, Ashurst Judge, says that "whenever there is a real and bona fide contract and delivery, and afterwards the goods are converted to the party's own use, that is not felony." "If A. delivers a horse to B. to ride to D. and return, and he rides away animo furandi, this is no felony —the like of other goods."—Co. P. C. 107, Butler's case; 1st vol. Hale P. C. 504. For ought appears to the contrary, there was a bona fide contract for hire, between the plaintiff in error and the owner of the horse, by virtue of which the horse was delivered. That delivery vested in the said Norton a special property in the horse and left the reversionary interest in Gordon, which differs from a mere custody, when the legal possession is

not changed: a conversion of the goods with a fellonious intention, in the latter case would be larceny, in the former nothing more than a mere breach of trust. As the evidence shows a bona fide hireing, the conviction is wrong.—See 1st vol. Hale's P. C. 504, 506 and 508; 2nd vol. East's P. C. 552, 685–6, 7, 655—2. Is the second instruction given by the court below warranted by law? See Archbold's criminal pleading, page 187; 2nd vol. Russell on crimes, 132; Russ. and Ry. 441, and 2nd vol. East's P. C. 655.

*Bird, attorney for the State.*

1. It will be insisted that the jury found according to the law and evidence. 2. That the first instruction of the court was right. 3. That if the second instruction was wrong, there was no evidence in the cause to which the jury could apply this instruction, and therefore the jury could not be misled by it. And the court ought not to disturb the judgment below, when it is evident the jury found right, merely because the court erred in giving an opinion which had no application to the case. That 1st instruction was right, see Rex v. Pear, Rex v. Charlewood, and Rex v. Simple, 12 Petersdorff's com. law, pages 58, 59, side pages. As to second instruction, see Strother v. Lucas, 4 Peter's Rep.

Opinion of the court delivered by McGirk J.*

Norton was indicted for horse stealing, in the circuit court of St. Louis county. A verdict was found against him, and judgment thereon; and he brought the case here by a writ of error. On the trial, the prosecution gave in evidence, that in the city of Saint Louis, one Gordon kept a livery stable. That on the 19th or 20th of March 1836, Norton came to the stable of Gordon the witness, on Friday and hired of him a horse saddle and bridle, to go to St. Charles on the next day and to return the next day. That on Saturday, Norton came to the stable and got the horse and started off on the horse; and that Norton never returned the horse nor came back to give any account of the same. That about the first of July afterwards, about night, some three weeks before the trial, the witness Gordon, went to his boarding house and sat down, and Norton came in, walked by and ran nearly over witness: had on entirely different clothes then, from those he had on when he got the horse: had

OCT. TERM
1836.

Norton
v.
The State.

Statement of the case.

---

*Judge Wash absent.

on double glass spectacles, and that witness did not then know him to be the same man. That when Norton got the horse, he said his name was Spencer Norton. That witness and an officer went next morning after Norton to arrest him, they found him at what is called the upper ferry. That he denied that his name was Spencer Norton, but said his name was Thomas Anderson. On the trial, the prisoner admitted that his name was Spencer Norton, and that he had hired the horse of Gordon. On this state of testimony, the circuit court gave two instructions: no objection is made to the first, the last was excepted to and is as follows: "If the jury shall be of opinion that there was a contract for hire between the prisoner and the owner of the horse, and that after the expiration of this contract, the prisoner conceived the design of stealing the horse, and carried him away with that design, they will find him guilty." This instruction is complained of as error.

For Norton the plaintiff in error, Mr. Risque contends, that if Norton obtained the horse on a hireing bona fide, without any intent to steal him when delivered, but afterwards conceived the intent to steal the horse and did do so, it amounted to a mere breach of trust: to prove this doctrine correct, he cites 2 vol. E. P. of the crown, 655, 688, in which last case, Ashurst Judge, says that whenever there is a real bona fide contract and delivery, and afterwards the goods are converted to the parties' own use, that is not felony. It is also contended by the counsel, that in this case, by the delivery to Norton, he had a special property in the goods, and the conversion of the same after the delivery to his own use, could not be felony; and cites 1st vol. Hale's P. C. 504, 6, 8; 2 vol. E. P. C. 552, 685–6, 7, 655; also, Archbold's crim. law, 187; 2nd vol. Russell on crimes, 441, and 2 vol. E. P. C. 655. These authorities seem to establish this doctrine, that if there be a delivery of goods, by a hireing and the hireing is found to be a mere device to get possession of the goods, and the bailee converts the goods to his use, it will be larceny: but if when the delivery was made there was no intent existing in the mind of the bailee to convert the same to his use, but he afterwards conceived the design and did so, this would not be larceny, but a breach of trust. Mr. Bird, the prosecuting attorney, replies to these arguments, the late enactment of the general assembly, R. code, sec. 42, p. 179, which says: "If any carrier or other bailee, shall embezzle or convert to his own use, or make way with or secrete, with intent

OCT. TERM
1836.

Norton
v.
The State.

to embezzle or to convert to his own use, any money, goods, rights in action, property or valuable security or effects, which shall have been delivered to him, or shall have come into his possession or under his care as such bailee, although he shall not break any trunk, package, box or other thing in which he received them, he shall on conviction be adjudged guilty of larceny," &c.

Opinion of the court.

This statute appears to us to justify the instruction the court gave. Mr. Allen for Norton, however contends, that this statute is subject to construction, and argues that the section is not to be extended to any bailee, but carriers and such as receive goods in boxes, packages &c.; and that the provision was only made to alter the rule of the common law, which provides that if a carrier of goods break open a package or box, and take a part of the goods out and convert to his use, it will be larceny; but that if he will use or sell the whole package or box, it will only be a breach of trust. We admit that the common law would hold it to be larceny when a package was broken and a part of the goods only taken out and used; but why it should not also be larceny if the whole package were disposed of with a view to defraud the owner, is a thing not well understood by this court. We admit that the statute does alter that rule of common law, and that it most clearly makes the conversion of goods by carriers, felony, though they convert or embezzle the whole package or box, without breaking the same.

Since the act of the Gen. Assembly (Rev. co. p. 179, s. 42,) if A. hires a horse, and either at the time he gets possession of him, or afterwards, conceives the design of stealing him, and carries him away with that design, he is guilty of larceny.

But we cannot agree with the counsel that the legislature intended to go no farther. Whether it be wise or unwise to extend the law to all bailees, is not a question for us to decide, if it be clear from the acts they have done that they have done so. That the legislature did not mean only to embrace common carriers, is to us apparent from the form of the enactment. They say if any carrier or other bailee shall convert or embezzle any goods, property, &c.; though he break not the box or package in which he received the same, he shall be holden guilty of larceny. If only carriers were intended to be embraced, why the words "or other bailee" should have been inserted, no reason has or can be given. These words can have no effect according to the argument, unless the goods &c. should be delivered in a box or package, and as some things can be so contained and delivered, and some cannot, it is insisted that the statute only applies to those which can be and are so contained and delivered. In our opinion, the legislature intended to make it larceny in all bailees to embezzle and convert

59

goods &c.; and the reason why they have said it should be so, though the package or box should not be broken, is that they knew the common law held if the box or package were not broken there would be no larceny. In the case of carriers, they intended to take away that rule of the common law as to them. The amount of the 2nd instruction given by the court was, that if the bailee Norton, hired the horse to go to St Charles, and got possession of him for that purpose, no matter whether he then or afterwards first conceived the design to convert him to his use, he is guilty of larceny. This is in our opinion, strictly in conformity with the law. Judgment affirmed.