Dotson v. State.

-----------

## DOTSON V. STATE.

1. EMBEZZLEMENT: *Conversion of money by bailee.*
   B. delivered to the defendant a horse to be sold for him.  The defendant sold the animal for $125 and received the money, but failed to deliver it to B.  *Held:*  That if it was expressly or impliedly understood that defendant should deliver to B. the identical money received for the horse, then he was a bailee of it, within the meaning of the statute, (Mansf. Dig., sec. 1640), and liable as such for its unlawful conversion.  But he could not be prosecuted for collecting a check received for the price of the horse, since it was in the line of his duty to make the collection.

2. SAME: *Indictment: Description of money.*
   A defendant cannot be lawfully convicted of embezzling paper currency on an indictment which describes it as "ten bills of the paper currency of the United States of the denomination and value of ten dollars each," as the description is insufficient because of its uncertainty.

Dotson v. State.

3. SAME: *Criminal intent: Instruction.*

On the trial of an indictment for embezzlement the court instructed the jury "that if they found from the evidence that the defendant converted the money alleged * * to have been embezzled, to his own use," they "would be authorized to infer the criminal intent." *Held:* That the instruction was not erroneous as calculated to mislead the jury, since the effect of it was to tell them that the conversion of the money was a circumstance from which a criminal intent might be inferred.

APPEAL from *Sebastian* Circuit Court.

J. S. LITTLE, Judge.

*The appellant pro se.*

1. "Paper currency of the United States" not sufficiently descriptive or definite. Bish. Cr. Pro., vol. 2, p. 321; 59 Ala., 73; 2 Gratt., 716.

2. It was misleading to instruct the jury that if the defendant lost the money gambling they would presume a fraudulent intent to convert to his use. This eliminates intent from crime. The intent to do a thing is always open to rebuttal. 1 Bish. Cr. Pro., 1099; 4 Ga., 14.

3. The verdict not supported by the evidence. The money was paid in paper currency, but there was no proof of the size or denomination. 2 Bish. Cr. Pro., 703. No gold was received at all, and the description of the paper currency being insufficient, there was no evidence to base the verdict on.

*Dan. W. Jones*, Attorney General, for appellee.

1. The description of the money was sufficient. 34 Ark., 159; 1 Whart. Cr. Law, sec. 355; 4 Sneed, 357; 138 Mass., 433; 3 Hawk., 618.

2. The effect of the court's instruction was to tell the jury that the conversion of the money to his own use was a circumstance from which a criminal intent might be inferred. See 34 Ark., 446.

BATTLE, J.

O. M. Bourland delivered a horse to appellant to sell for him. Appellant sold the horse for $125 and received the money, but failed to deliver it to Bourland. On account of this failure he was indicted for embezzlement. The indictment charges as follows: "The said Lewis Dotson, on the 15th day of January, 1888, in the county and district aforesaid, then being a bailee of one O. M. Bourland to sell a certain horse, the property of said O. M. Bourland, of the value of one hundred and twenty-five dollars, and as such bailee having received said horse into his care, custody and charge, and then as such bailee sold the horse for the sum of one hundred and twenty-five dollars, and having received said money into his hands as such bailee, which said money was described as follows: Ten bills of the paper currency of the United States of America, of the denomination and value of ten dollars each; twenty bills of the paper currency of the United States of America, of the denomination and value of five dollars each; six bills of the paper currency of the United States of America, of the denomination and value of twenty dollars each; six pieces of the current gold coin of the United States of America, of the denomination and value of twenty dollars each, did then and there wilfully and unlawfully make way with, embezzle and convert to his own use the money described aforesaid, the property of said O. M. Bourland, without his consent so to do, against the peace and dignity of the state of Arkansas." It also charges that he received a check for the $125, and wilfully, feloniously and unlawfully, embezzled, made way with, and converted it to his own use, without the consent of Bourland. He demurred to the indictment; and the court overruled his demurrer;

Dotson v. State.

and he was tried and convicted.    Should he have been convicted?

The statute under which he was indicted reads as follows: "If any carrier or other bailee shall embezzle, or convert to his own use, or make way with or secrete with intent to embezzle, or convert to his own use, any money, goods, rights in action, property, effects or valuable security, which shall have come to his possession, or have been delivered to him, or placed under his care or custody, such bailee, although he shall not break any trunk, package, box or other thing in which he received them, shall be deemed guilty of larceny, and on conviction shall be punished as in cases of larceny." Mansfield's Digest, sec. 1640.

The term "bailee" when used in statutes declaring what acts of embezzlement shall constitute a public offense, is not to be understood, says Mr. Wharton, "in its large, but in its limited sense, as including simply those bailees who are authorized to keep, to transfer, or to deliver, and who receive the goods first *bona fide*, and then fraudulently convert." "When it does not appear that any fiduciary duty is imposed on the defendant to restore the specific goods of which the alleged bailment is composed, a bailment under the statute is not constituted, though it is otherwise when a specific thing, whether money, securities, or goods, is received in trust and then appropriated."    1. Wharton Cr. Law. (9th Ed.), sec. 1055; *Krause v. Commonwealth*, 93 Penn. St., 418; *Watson v. State*, 70 Ala., 13.

By 24 and 25 Vict. c. 96, s. 3, it is provided that "whosoever, being a bailee of any chattel, money, or valuable security, shall fraudulently take or convert the same to his own use, or the use of any person other than the owner thereof, although he shall not break bulk or otherwise determine the

bailment, shall be guilty of larceny, and may be convicted thereof upon an indictment for larceny."

In *Reg. v. Aden*, 12 Cox Cr. C., 512, Kelly, C. B., in delivering the opinion of the court, said: "In this case, a sum of money was placed in the hands of a boatman for the purpose of purchasing coals for the prosecutor from a colliery company, which coals the prisoner was to pay for with the money so placed in his hands by the prosecutor. The prisoner did not buy any coals, but paid away part of the money in satisfaction of a debt owing by him to the colliery company, and failed to procure the coals. This was a clear case of larceny of money entrusted to the prisoner as a bailee, within 24 and 25 Vict., c. 96, s. 3."

In *Reg. v. Hassall*, 8 Cox Cr. C., 491, the defendant was a treasurer of a money-club, and in his official capacity received small weekly payments from each member, "and had authority, with the secretary's consent, to lend the club money to members." Under the rules of the club a periodical division of the money among the members was required to be made. He was indicted for larceny of moneys paid to him by the members of the club, under the fourth section of 20 and 21, Vic. c., 54, which provided: "If any person, being a bailee of any property, shall fraudulently take or convert the same to his own use, or the use of any person other than the owner thereof, although he shall not break bulk, or otherwise determine the bailment, he shall be guilty of larceny." The court held a conviction under the indictment could not be sustained. The court said "that the word 'bailment' must be interpreted according to its ordinary legal acceptation. Understood in that sense, bailment relates to something in the hands of the bailee which is to be returned in *specie*, and does not apply to the case of money in the

hands of a party who is not under obligation to return it in precisely the identical coins which he originally received."

In *Reg. v. Bunkall*, 9 Cox, C. C., 419, "the prisoner was intrusted with money to buy coals, and to bring them home to the prosecutor, for remuneration, with the prisoner's own horse and cart. The prisoner having purchased the coals and loaded them, on his way home abstracted part, with intent to convert it and to deprive his master of the same." He was indicted for and convicted of larceny as a bailee under 20 and 21 Vict., c. 54, s. 4.

In *Reg. v. DeBanks*, 15 Cox Cr. C., 450, the indictment charged, "that the prisoner, as a servant of the prosecutor, received a sum of money and fraudulently embezzled and appropriated it, and so did steal the money." The evidence was: "The prisoner not being otherwise in the service of the prosecutor, was employed by him merely to take care of a horse for a few days and afterwards to sell it;" and that he sold it and received the money. The prosecutor, as he could not go himself, sent his wife to receive the money from the prisoner. She pressed him for the money; and he absconded with it and appropriated it to his own use. The court held that he was a bailee of the money, and could be convicted of larceny. Lord Coleridge, C. J., said: "I think the effect of the evidence is, that he was to sell the mare, and receive the money for the prosecutor; that is, he was to hand over the money, when he received it, to the prosecutor or his agent, as and when he received it. * * * She demanded it, and he appropriated it to his own use; and it appears to me that under these circumstances, the case comes directly within the statute; that the prisoner fraudulently converted the money to his own use, and that, therefore, he was properly convicted." Grove, J., said: "Was

he a bailee of the money for the prosecutor? I think he was, and not the less so because the prosecutor had not himself given him the money.''

According to these authorites, appellant was a bailee of the money he received for the horse, in the sense that term is used in the statute under which he was indicted, if it was expressly or impliedly understood that he should deliver the identical proceeds of the sale to Bourland. If it was the intention of the parties that appellant should hand the money received for the horse to Bourland, then he was liable as bailee, under the statute, for the unlawful conversion of it.

1. EMBEZ-
ZLEMENT:
Conversion
of money by
bailee.

The evidence adduced at the trial proves that he sold the horse for $125 and received a check on a bank for the amount. He collected the check in the paper currency of the United States, and received no part of it in gold. It is obvious that he could not be held liable, under these circumstances, for embezzling the check; for it was only a means to enable him to collect the purchase money, and it was in the line of his duty to Bourland to collect it. As the paper currency alleged to have been converted is not sufficiently described in the indictment, he should not have been convicted of unlawfully converting it. There was no evidence of his having received gold coin. He ought not, therefore, to have been convicted under the indictment.

It was held by this court, at its present term, in *State v. Oakley*, that it was not sufficient in an indictment for larceny to describe the property stolen as ''two ten dollar bills in the currency of the United States,'' and that a demurrer to the indictment in that case was properly sustained on that account. It has also been held by this court in *State v. Thompson*, 42 Ark., 517, that an indictment for embezzlement must describe the money embezzled as specifically as in larceny.

2. SAME:
Indict-
ment: Des-
cription of
money.

As it is obvious that a new indictment against the appellant will have to be found and returned by a grand jury before he can be lawfully convicted of the offence charged, it is unnecessary to say anything further as to the indictment.

**3. SAME: Criminal intent: Instruction.** The court below instructed the jury "that if they found from the evidence that the defendant converted the money alleged in the indictment to have been embezzled, to his own use, the jury would be authorized to infer the criminal intent, and this rule would apply to a case where the money had been gambled off by defendant." It is urged that this instruction was erroneous, because it was calculated to mislead the jury. But we think not. The effect of it was to tell the jury that the conversion was a circumstance from which they might infer a criminal intent. Understood in that way, it is correct; for in the absence of evidence to the contrary, it is presumed he intended the natural consequences of his acts. Of course, in considering the intent of the appellant, the jury ought to have taken into consideration the conversion and all other evidence which tended to prove it.

Reversed and remanded for a new trial.