## WALLIS *v.* STATE.

Decided June 27, 1891.

1. *Grand jury—Presumption.*

  Where the record discloses that a grand jury of sixteen persons named was duly empaneled, it will be presumed, in the absence of a contrary showing, that other persons who were summoned but did not serve as grand jurors were excused for cause.

2. *Embezzlement—Bailee.*

  The statute defining the crime of embezzlement by "any carrier or other bailee" (Mansf. Dig., sec. 1640) is not confined to bailees of the generic class "carriers," but embraces all bailees.

3. *Bailment—Attorney.*

  An attorney who has collected funds belonging to a client is a bailee and not a debtor of such client.

4. *Attorney—Embezzlement of school funds.*

  An attorney employed under the act of March 31, 1885, to collect demands due to the school fund is guilty of embezzlement if he converts to his own use money so collected, notwithstanding the act provides that he may retain as a fee for collection 10 per cent. of the gross amount collected.

5. *Embezzlement—Demand.*

  To constitute the crime of embezzlement, under this statute, it is unnecessary to prove a demand.

6. *Venue.*

  The locality of the crime of embezzlement is sufficiently proved by evidence that the defendant resided and collected the money in the county of the venue, and that when last seen it was in his custody in that county.

7.  *Embezzlement—Description of money.*

On an indictment which charges the conversion of a sum of money comprising greenbacks, gold and silver certificates and national bank notes, proof that the money converted was of one or other of the four kinds of bills described, without further description, will support a verdict of guilty.

APPEAL from *Sebastian* Circuit Court, Fort Smith District.

EDGAR E. BRYANT, Judge.

W. W. Wallis, an attorney, was indicted in Scott county for embezzlement of $1567.56 collected by him by virtue of his employment by the Attorney General, under the act approved March 31, 1885, to collect claims and notes due the school fund.   Upon his application a change of venue was taken to the circuit court of Sebastian county for the Fort Smith district.   In the latter court a motion was made to quash the indictment because the record of the former court showed that Thomas Parker had been selected by the jury commissioners as a grand juror and summoned by the sheriff, but did not appear to have been excused, though the record showed that a grand jury of sixteen persons named, not including Parker, was duly empaneled.   The motion was denied.   A demurrer to the indictment, the grounds of which are stated in the opinion, was overruled.   Defendant was convicted and has appealed.

*John S. Little* and *Rogers & Read* for appellant.

1.   The indictment should have been quashed for error in empaneling the grand jury.   Mansf. Dig., sec. 3991-2. The record does not show that Thomas Parker was either empaneled or excused.   21 Ark., 128.

2.   An attorney is not a bailee, within the provisions of sec. 1640, Mansf. Dig., which only applies to carriers and bailees of that class.   Endl. Int. St., sec. 405, pp. 558, 568 ; Bish. St. Cr., sec. 245 ; 2 S. W. Rep., 223 ; 49 Mo., 559 ; 43 Texas, 404.

3.   Under the terms of the contract appellant became a *joint owner* of the money collected to the extent of his commissions, and could not be guilty of embezzlement.

Whart. Cr. Law, sec. 1054, 9th ed.;   Acts 1885, p. 167, sec.
12 ; 22 Minn., 41 ; 11 Metc. (Mass.), 64; 30 Kan., 534.

4.   Under his employment, when the funds were collected,
the legal title vested in him, and he became debtor for the
amount collected less his commissions.   2 Met. (Mass.),
343 ; 12 Cush., 112; 9 Met. (Mass.), 499 ; 125 Mass., 15 ;
32 Mich., 131 ; 56 Ind., 346 ; 53 Ind., 331 ; 3 How. (U. S.),
578 ; 1 Denio, 233 ; 7 Hill, 384.

5.   A demand was necessary.   2 Ark., 402 ; 3 *id.*, 82.

6.   There is an utter failure of proof as to the character
and kind of money ; nor is it shown that it was converted
in Scott county.

*J. B. McDonough*, Prosecuting Attorney, with whom is
*W. E. Atkinson*, Attorney General, for appellee.

1.   The record shows that Thomas Parker was excused.
But if the record was silent, the presumption is that he was
excused.   16 Ark., 43 ; 8 *id.*, 374.

2.   An attorney is a bailee, within the statute.   3 Ark.
82; *People* v. *Converse*, 42 N. W. Rep.; 51 Ark., 119 ; 82 Pa.
St., 483 ; Rapalje & Law., Dict.; Bouvier, Dict ; 3 H. & C.,
921 ; 3 E. & E., 501 ; 30 L. J., 99 ; 3 B. & Ad., 216 ; 1 C. C.
(L. R.), 27 ; 1 Q. B. Div., 12 ; Endlich, Int. Stat.,, sec. 410 ;
3 McCord (S. C.), 306 ; 2 Strob. (S. C.), 474 ; 9 Tex., 521 ;
26 Oh. St., 196 ; Bish. Cr. Law, sec. 246 ; 118 Mass., 350 ;
Endlich, Int. Stat., sec. 411 ; 9 C. P. (L. R.), 339 ; 8 Q. B.
Div., 275; 51 L. J. M. C., 53 ; L. R., 9 Q. B., 440 ; 33 La.
An., 253 ; Bish. St. Cr., sec. 246 ; 19 Me., 394 ; 44 Mo.,
458 ; 69 Cal., 226 ; 8 Cox, C. C., 436 ; 8 Cal., 42 ; 19 Cal.,
600 ; 71 *id.*, 390 ; 33 La. An., 1161 ; 2 New Mex., 250 ; 21
Kan., 730 (534); 25 Pac. Rep., 616 ; 22 Kan., 170.

3.   Appellant was not a tenant in common of the money
collected.   15 N. E. Rep., 481–3 ; 45 Ohio St., 535 ; 26
N. E. Rep., 858 ; 48 N. W. Rep., 292 ; 24 Pac. Rep., 183 ;
74 Mich., 478.

4.   The collection of the money, and the fact that he had
the right to retain his commissions, do not make him a

mere debtor to the State, nor discharge him from his duty as a bailee to remit the balance. 35 Ohio St., 70; 1 Leigh & C., 85; 36 Mich., 306; Russ. & R. C. C., 139; Car. & M., 525; 16 Russ. & R. C. C., 139; Russ. & R. C. C., 463; 3 Starkie, 63; 80 Mo., 358; 22 Kan., 200; 25 Minn., 490; 8 C. & P., 742.

4. No demand was necessary. 111 Ind., 289; 22 Kan., 211; 10 Gray, 173.

5. The proof was sufficient that the conversion took place in Scott county. 25 Pac. Rep., 130; 83 Ga., 171; Desty on Cr. Law, sec. 146*c*; 98 Am. Dec., 132–3–4.

**1. Presumption as to formation of grand jury.** HEMINGWAY, J. I. When it appears by the record that a grand jury made up of sixteen persons named was duly empaneled, it will be presumed, in the absence of a contrary showing, that persons not named in the panel but who were selected by the jury commissioners and summoned by the sheriff to serve as grand jurors were excused from such service by the court; and it will be further presumed, unless the contrary appears, that the court excused such persons for good and sufficient reasons. We conclude that the motion to set aside the indictment was properly overruled.

II. The controlling question in the case arises upon the construction of section 1640, Mansf. Dig., which defines the crime of embezzlement by carriers and other bailees.

The section referred to reads as follows: "If any carrier or other bailee shall embezzle, or convert to his own use, or make way with, or secrete with intent to embezzle, or convert to his own use, any money, goods, rights in action, property, effects or valuable security, which shall have come to his possession, or have been delivered to him, or placed under his care or custody, such bailee, although he shall not break any trunk, package, box or other thing in which he received them, shall be deemed guilty of larceny, and on conviction shall be punished as in cases of larceny."

Does the statute cover the case of an attorney employed by the Attorney General of the State, under the provisions

of the act of March 31, 1885, to collect demands due to the
school fund arising from the sale of sixteenth section lands?
This act provides that attorneys employed under its pro-
visions may retain as fees for collection 10 per cent. of the
gross amount collected by them, and that " the remainder
of said gross amount, after deducting their fees as above
provided for, shall be by said attorneys transmitted without
delay to the Treasurer of State." Acts 1885, p. 167, sec. 12.

It is contended that although the defendant may have
converted moneys collected by him as an attorney employed
under the provisions of this act, he is not indictable under
the statute defining embezzlement. Three grounds are
alleged in support of this contention, as follows: 1st. That
the statute applies only to carriers and bailees of the same
generic kind as carriers; 2nd. That upon the collection of
the money it became the property of the defendant, and he
became the debtor of the school fund—in other words, that
the relation of creditor and debtor, and not that of bailor and
bailee, arose; 3d. That if the entire amount collected did
not become the property of the defendant, he became the
owner of an undivided one-tenth part thereof, and in respect
thereto could not commit the crime of embezzlement. We
will proceed to consider the sufficiency of the grounds relied
upon in the order above stated.

(1). It is insisted that the rule *ejusdem generis* restricts
the meaning of the term " other bailee " to the generic class
" carrier." The rule invoked is by no means of universal
application, and its use is to carry out, not to defeat, the
legislative intent. Where an act attempts to enumerate the
several species of a generic class, and follows the enumera-
tion by a general term more comprehensive than the class,
the act will be restrained in its operation because it is dis-
cerned that the legislature so intended; but where the de-
tailed enumeration embraces all the things capable of being
classed as of their kind, and general words are added, they
must be applied to things of a different kind from those
enumerated. For the rule does not require the entire rejec-

2. Embezzl-
ment by bailee

tion of general words, and is to be used in harmony with the elemental canon of construction, that no word is to be treated as unmeaning if a construction can be found that will preserve it and make it effectual. End. Int. Stat., secs. 23, 410–14. If the legislature, in the statute under consideration, had undertaken to detail the different kinds of carriers, and had followed the enumeration with the general words " and other bailees," its purpose might reasonably be implied to include such bailees only as belonged to the class carriers, and had been omitted in the enumeration ; but having employed the generic term " carriers " and thus included all carriers of every kind, it must have intended, in adding the broader term, to embrace within the act something more than carriers. Otherwise the addition was without purpose, and the term added without meaning. The statute under consideration is a part of the revised statutes of 1838, and is a substantial transcript of a Missouri statute which was construed by the Supreme Court of that State before its adoption in this State. The same rule was invoked there as here to restrain the operation of the general words ; but the court said : " In our opinion, the legislature intended to make it larceny in all bailees to embezzle and convert goods," etc. *Norton* v. *State*, 4 Mo., 461. The Court of Appeals of that State, an intermediate tribunal but one of great learning, subsequently approved this construction of the act. *State* v. *Broderick*, 7 Mo. App., 19. In a later case the Supreme Court of that State expressed a different view of the statute, but this was done without any discussion of the question or even a reference to the earlier decisions. *State* v. *Grisham*, 90 Mo., 163. If it is to be presumed that the law-makers here, in adopting the act of a sister State, intended to adopt the construction put upon it by the highest courts of that State, the presumption would extend only to the construction given prior to its adoption here. End. Int. Stat., sec. 371. Looking to its construction there preceding its adoption here, we find the rule *ejusdem generis* not applied, because it would destroy parts of the act. In Dot-

son's case, decided in this court, the rule was not invoked, but the act was construed and a broader meaning given it than the rule would admit of. *Dotson* v. *State*, 51 Ark., 119. Upon consideration we are constrained to adopt the construction first put upon the act in Missouri. That does not extend the natural import of the terms employed, or enlarge the scope of the act by construction; but accords to these terms their ordinary signification, and declines to restrict their operation.

(2). Having determined that the act applies to other bailees as well as to carriers, we are next called to decide whether the defendant, by reason of collecting money due the school fund, occupied toward the school fund the relation of debtor or that of bailee. As before stated; the act under which he was employed provides that the attorney may deduct 10 per cent. of the gross amount collected for his fees, and that he shall without delay transmit the remainder to the State Treasurer. The natural signification of this provision is that he may take a part of the collection in satisfaction of his fees, and that he shall deliver the remaining part to the Treasurer. There is no implication in the act that he shall receive and appropriate the money, and upon subsequent settlement pay the amount found due; the express provision excludes such implication. The act permits him to segregate a part from the whole and appropriate it; upon segregation the part becomes his, while the remainder belongs to the school fund. The express permission to appropriate a part is an implied prohibition against appropriating the remainder. If by the act it all became his, why provide that he could deduct and appropriate a part? The act, in requiring that he transmit the remainder after deducting his commission, leaves no room for construction; it in express terms imposes the duty of delivering such remainder; and as such was his duty, he was a bailee, as defined in *Dotson* v. *State*, 51 Ark., *supra*, and not a debtor. If he had made a general assignment while it was in his custody, can it be contended that it would have passed to his assignee? Or

*3. An attorney is a bailee when.*

if his creditors had proceeded against him for a discovery of his assets, can it be that he would have been required to discover and surrender it in satisfaction of their demands ? Now he either held it for himself or for his client; if for himself, it was subject to all the incidents and burdens of private property; if for his client, it was for the purpose of delivery only. That was his only duty in reference to it, for he was not authorized to lend, invest or otherwise dispose of it. Attorneys are usually selected with reference to their ability and fidelity; but if moneys collected by them are liable for their individual demands, their solvency becomes quite as important a consideration as their skill and integrity. But we do not think the defendant's creditors could have asserted the right to apply the funds collected by him to their demands. Although in his custody, it was held by him as the property of the school fund; and so long as he held it, the owner could have asserted its ownership and the right of possession as an incident thereof.

But it may be said that he could lawfully have converted the money into exchange for the purpose of transmission, and that, as this is true, it was not his duty to transmit the specific money. If the premise be conceded, the conclusion does not follow. It would only follow that there could be a substantive performance of the duty by means of a substituted delivery where a specific delivery was impracticable. Until the money was converted into exchange for transmission, he would hold it under the duty arising by his employment ; and after such conversion, if authorized, the same duty would arise as to the exchange. The right of property in the money, or substitute for it, would be in the school fund. Authority to change its form for purposes of transmission would not authorize its conversion to his own use or for any other purpose. There is nothing in the act which implies an intent to credit him, and he could not, without the consent of his client, create the relation of creditor and debtor. That is a relation which should arise only by consent of both parties. Bankers and perhaps

persons engaged in other pursuits conduct their business with money deposited, and the right to use such deposits is implied from the character of their pursuits.   In such cases the right of use carries the right of property, and the relation of debtor and creditor springs from the deposit.   But a deposit of money creates the relation of debtor and creditor, and passes the right of property in the money only when it is made with the understanding, express or implied, that a right of use goes with the deposit.   Such is not the case with money collected by an attorney at law; it is not part of his business to use the money of his client; he collects it for the sole purpose of transmission.

This court has twice decided that an attorney, as to money collected, was the agent of his client.   *Palmer* v. *Ashley*, 3 Ark., 75 ; *Cummins* v. *McLain*, 2 Ark., 413.   If he is the agent, he is not a debtor.   He cannot at the same time occupy both relations with reference to the same collection. And as it is settled that he is an agent, the scope and purpose of his agency are easily determined.   His only duty is to hold the money until he can make a delivery of it.   The client can demand delivery at any time after the collection ; and as such is his right, the duty of the attorney to make delivery follows.

The relation of an attorney to his client is the same whether he collects money or receives other property in the course of his employment.   If he should receive for his client securities, jewels or other chattels, would it be contended that the property in them passed to him, and that he became bound to pay his client their value?   He has ' the same rights and the same duties with reference to them as with reference to money ; and if money becomes his by collection, they become his if received into his possession. True, if before a felonious conversion he pay over an equal amount of other money, there is no violation of the criminal law because there is no felonious intent, and there is no civil liability because there is no damage.   But the fact that an attorney may thus avoid criminal and civil responsi-

bility, does not change his attitude towards his client. It is held by some courts, for whose opinions we entertain the highest regard, that an attorney cannot commit embezzlement as to moneys collected by him; and the reason assigned is that he is but the debtor to his client. *Commonwealth v. Libbey*, 11 Met., 64. As the reason embodies a principle in conflict with the decisions of this court above cited, the conclusion can have no controlling influence with us.

4. Embezzlement by a collecting attorney. (3). We do not think the defendant had an undivided interest in the collection. The collection belonged to the school fund, and he had a claim against it for his fees. The act under which he was employed made the amount of the collection the basis for fixing the amount of his fees, but did not transfer to him a property interest therein, nor convert an agency into a tenancy in common. He had the right to segregate one-tenth part from the whole of the collection and to appropriate that part, but until such segregation the whole belonged to the school fund. *People* v. *Converse*, 74 Mich., 478; *State* v. *Shadd*, 80 Mo., 358; *Territory* v. *Meyer*, 24 Pac. Rep., 183; *Rex* v. *Hartley*, R. & R., 139.

It follows from the views expressed that an attorney employed to collect demands due to the school fund is a bailee within the meaning of the act.

5. Necessity of demand. III. It is further insisted that the defendant is entitled to a new trial because there is no proof that a demand had been made upon him for the money. It is necessary to allege and prove a demand only where the statute makes it an element of the crime. As the statute under consideration does not make a demand such an element, no demand was necessary. The crime charged was not a failure to pay over the money on demand, but simply a felonious conversion. If the defendant had thus converted the money, his crime was complete, and his response to a demand could not have absolved him; if he had not thus converted it, he was not guilty.

IV.   It is further insisted that there is no proof that the   6. Venue.
money was embezzled in Scott county.  The defendant re-
sided in that county and collected the money there.  The
last time it was seen, it was in his custody in that county.
As venue may be proved by circumstances, we think the
jury were warranted in finding that the conversion occurred
in that county.

V.   The indictment charges the conversion of a sum of   7. Descrip-
  tion of money
money comprising greenbacks, gold certificates, silver certif- taken.
icates and national bank notes.  It was proved that the de-
fendant collected a large sum, that it was in paper money,
and that it was of one or other of the four kinds of bills de-
scribed in the indictment.  If it was either or all, it came
within the charge, and we think the proof on that point suf-
ficient.

VI.   It could serve no purpose to set out the proof.  We
think it supports the verdict rendered.  We find no error in
the record, and the judgment will be affirmed.