D. J. FAGGARD. V. STATE.

No. 87. Opinion Filed November 15, 1909.

(104 Pac. 930.)

1. **EMBEZZLEMENT—Bailees—"Any Carrier or Other Bailee."** The statute defining the crime of embezzlement by "any carrier or other bailee" (Mansf. Dig. sec. 1640 [Ind. T. Ann. St. 1899, sec. 983]) is not confined to bailies of the generic class "carriers," but embraces all bailees.

2. **EMBEZZLEMENT—Treasurer of Society—Servant.** The treasurer of a society may be a servant of the society, and as such may be guilty of embezzling the funds of the society.

3. **INDICTMENT AND INFORMATION—Form and Requisites—Indictment Returned after Statehood.** An indictment for an of-

fense committed under the laws in force in the Indian Territory, returned after the admission of the state into the Union, should be in the name of "The State of · Oklahoma," and conclude "against the peace and dignity of the state." ·

4. **TRIAL—Direction of Verdict.** It is not error for the court to refuse to instruct the jury to return a verdict of not guilty, where there is competent evidence reasonably tending to prove the defendant guilty.

(Syllabus by the Court.)

D. J. Faggard was convicted of embezzlement, and brought error to the Supreme Court, whence the cause was transferred to the Criminal Court of Appeals. Affirmed.

The plaintiff in error, hereafter referred to as defendant, was indicted in the district court, Pittsburg county, 11th day of January, 1908, charged with the crime of embezzling the funds of Local No. 1306, District 21, of the United Mine Workers of America, in Pittsburg county, on the 1st day of May, 1907. He was tried and convicted and sentenced to imprisonment in the penitentiary for one year and one day. The case was appealed to the Supreme Court of this state, and by proper order transferred to this court.

*Wallace Wilkinson,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., for defendant in error.

OWEN, JUDGE (after stating the facts as above). The defendant in this case was treasurer of Local No. 1306, District No. 21, of the United Mine Workers of America, located in Pittsburg county. On examination of the books kept by him as treasurer of the union he was found to be indebted to the order in the sum of $388. He admitted that he had no funds, and was unable to account for the shortage, except that he must have lost the vouchers on which he paid the money, and had failed to enter it on his cashbook.

The petition assigns 19 specifications of error, but this number is reduced by the brief filed by counsel for the defendant. The

first assignment urged is that the indictment should have been quashed for the reason that one of the members of the jury commission which selected the grand jury, and one member of the grand jury which returned the indictment in this case, lived within that part of Pittsburg county that prior to statehood was portion of the Western District of the Indian Territory, and the offense is alleged to have been committed, prior to the admission of the state, in that part of Pittsburg county which was the Central district of Indian Territory. It appears from the record that the grand jury was selected in the manner as provided for by the statute in force prior to statehood, and that the jury consisted of 16 persons, as required by that statute. This court held, in the case of *Sharp v. State, ante,* p. 24, 104 Pac. 71, that a defendant charged with the commission of a crime is entitled to be tried and dealt with under the laws as they existed at the time of the alleged commission of the offense of which he stands charged, in all matters where such laws vouchsafe to him a substantial protection. This case seems to have been tried under the Oklahoma criminal procedure, without objection on the part of defendant, but the grand jury was selected and composed of 16 persons, as was required by the law in force at the time of the commission of the alleged offense. We are unable to understand how the defendant could possibly be deprived of any substantial right by reason of the fact that one of the jury commissioners and one member of the grand jury lived just across the line from what was formerly the Central district in which the crime was committed. We are not unmindful of the rule that a person charged with crime is entitled to be tried by a jury summoned from the vicinage where the crime is said to have been committed. This rule applies more particularly to petit juries than to grand juries; but, even applying it to grand juries, it avails the defendant nothing. If the grand jury had been selected in a manner different, and composed of a number different, from that provided for in the law in force at the time of the commission of the crime, and that difference deprived him of a substantial protection, then he could be heard

3 Cr.—11

to complain. In the case of *United States v. Haskell et al.* (D. C.) 169 Fed. 449, the court at great length reviews the authorities on the question presented here, and the holding in this case is in harmony with the rule announced there and the authorities cited.

It is urged with considerable force by counsel for the defendant that section 1640, Mansf. Dig. Ark. (section 983, Ind. T. Ann. St. 1899), under which the indictment in this case was returned, does not apply to a treasurer of a fraternal organization such as the United Mine Workers. Section 1640 is as follows:

"Section 983. (M. D. 1640.) If any carrier or other bailee shall embezzle, or convert to his own use, or make way with, or secrete with intent to embezzle, or convert to his own use, any money, goods, rights in action, property, effects or valuable security, which shall have come to his possession, or have been delivered to him, or placed under his care or custody, such bailee, although he shall not break any trunk, package, box or other thing in which he received them, shall be deemed guilty of larceny, and on conviction shall be punished as in cases of larceny."

Counsel insist that the words "other bailee," under the rule, *ejusdem generis,* are limited by the word "carrier," and that under the provisions of this section only those are punishable who occupy the relation of carrier, and in support of that contention cites *Dotson v. State,* 51 Ark. 119, 10 S. W. 18; *State v. Grisham,* 90 Mo. 163, 2 S. W. 223, and Whar. Crim. Law, § 1055. We find on investigation that this section of the Statutes of Arkansas, which were adopted by Congress May 2, 1890, to apply in the Indian Territory, was a part of the Revised Statutes of Arkansas of 1838, and a substantial transcript of the Missouri statute. It is true that the Supreme Court of Missouri, in the case of *State v. Grisham,* 90 Mo. 163, 2 S. W. 223, held:

"Its obvious purpose was to punish in common carriers the crime of embezzlement, and to the words 'other bailee' the rule *ejusdem generis* applies; i. e., that under the provisions of that section only those are punishable who occupy the relation of common carrier, or some similar contractual relation."

This decision was rendered by the Missouri court in 1886; long after the statute had been adopted in Arkansas. In June, 1897, and before the Arkansas statute was adopted by Congress,

it was construed by the Supreme Court of Arkansas, in the case of *Wallis v. State*, 54 Ark. 611, 16 S. W. 821, quoting with approval the case of *Norton v. State*, 4 Mo. 461, which construed this statute before it was adopted in Arkansas. The court in that case held that the section applied to all bailees, that the words "other bailee" were not limited by the word "carriers," and that it meant all bailees other than carriers. This opinion was followed in the case of *State v. Broderick*, 7 Mo. App. 19. Thus we see the statute was adopted into Arkansas with that construction, and the later case in Missouri of *State v. Grisham* would not be binding on the Arkansas courts or on this court. The rule that the lawmakers in adopting the act of a sister state intend to adopt the construction put upon it by the higher courts of that state extends only to the construction put upon it prior to its adoption. The rule of *ejusdem generis* is by no means of universal application, and its use is to carry out, not to defeat, the legislative intent. Where an act attempts to enumerate the several species of a generic class, and follows the enumeration by a general term more comprehensive than the class, the act will be restrained in its operation, because it is discerned that the Legislature so intended; but, where the detailed enumeration embraces all the things capable of being classed as of their kind, and general words are added, they must be applied to things of a different kind from those enumerated. For the rule does not require the entire rejection of general words, and is to be used in harmony with the elemental canon of construction that no word is to be treated as unmeaning if a construction can be found that will preserve it and make it effectual. If the Legislature, in the statute under consideration, had undertaken to detail the different kinds of carriers, and had followed the enumeration with the general words "and other bailees," its purpose might reasonably be implied to include such bailees only as belonged to the class carriers, and had been omitted in the enumeration; but, having employed the generic term "carriers," and thus included all carriers of every kind, it must have intended, in adding the broader term, to embrace within the act something more than carriers. Otherwise the addition was without

purpose, and the term added without meaning. One of the cases relied upon by counsel for defendant is the case of *Dotson v. State,* 51 Ark. 119, 10 S. W. 18. In our opinion the holding in that case is not in harmony with the contention made by counsel. In that case the defendant was the bailee of a horse for the purpose of selling it, and delivering the money to the owner. He sold the horse for a check on a bank, cashed the check, and appropriated some of the money. The court held that he could not be convicted for embezzling the check, since it was in his line of duty to make the collection, but held that he was a bailee of the money received for the horse within the meaning of the statute. Section 1055, Whar. Crim. Law, relied on by counsel, provides:

"Section 1055. The term 'bailee' is one to be used, not in its large, but in its limited, sense as including simply those bailees who are authorized to keep, to transfer, or to deliver, and who receive the goods first *bona fide,* and then fraudulently convert."

A footnote to this section refers to the case of *Wallis v. State,* 54 Ark. 611, 16 S. W. 821, above referred to.

One assignment urged by counsel for defendant is that, the defendant being a member of the union, and the union being in its nature a fraternal organization, he could not be convicted of embezzling its funds, and cites authorities which announce the rule that a partner or person having an interest in property embezzled cannot ordinarily be convicted of embezzlement. That rule is well settled, but has no application here. It cannot be claimed that the union was a partnership, and that the defendant was one of the partners. Such associations as the one in question are not partnerships. The purposes of such organizations are benevolent and fraternal, not for the purpose of business or the accumulation of profit. They do not partake of the nature of partnerships. *State v. Campbell,* 59 Kan. 246, 52 Pac. 455; *Laycock v. State,* 136 Ind. 217, 36 N. E. 137. A prosecution cannot be maintained against members of societies or against partnerships for embezzlement, because the possession of the particular member or partner is the possession of the whole fraternity or firm, for the benefit of the entire firm; and such men cannot be servants. An officer

of such society may be a servant, and may embezzle money as such. The proof in this case is to the effect that the defendant was treasurer of the society, that he was paid a salary of $2 per month, and that he received the money from the financial trustees. True, the money was paid by the mining company, and made up of 60 cents taken from the wages of each member of the union, including the defendant.

Wharton, in his Criminal Law (10th Ed.) § 1017, says:

"The treasurer of a society may be a servant of the society and as such may be guilty of embezzling the funds of the society."

It is urged by counsel that because the defendant, under the rules of the miners' union, was required to collect the money and pay it out to the individuals, and to send some of it to the National Union, he was not a bailee; that it was not his duty to return the specific money collected. It may be said that he could have lawfully converted the money into exchange for the purpose of transmission, and that, as this is true, it was not his duty to either return or transmit the specific money. This contention is made under the general rule that, before a person can become a bailee, he must have specific money or property delivered to him, and he must be held to deliver that specific money or property. The proof here is that the defendant was treasurer of the society. It was his duty to receive the money from the trustees and account for the same, and was authorized to pay it out only on the vouchers of the secretary countersigned by the presiding officer. Authority to change its form for purpose of delivery would not authorize its conversion to his own use or for any other purpose. There was nothing in his duties as treasurer which would create the relation of creditor and debtor. That is a relation which can arise only through consent of both parties. Bankers conduct their business with money deposited, and the right to use such deposits is implied from the character of their pursuits. In such cases the right of use carries the right of property, and the relation of debtor and creditor springs from the deposit. But a deposit of money creates the relation of debtor and creditor, and passes the right of property in the money only when it is made with the un-

derstanding, express or implied, that a right of use goes with the deposit. Such is not the case with money collected by a treasurer. It is not a part of his business to use the money of the society. He collects it for the sole purpose of safekeeping and disbursing, under the orders and directions of the society.

It is next urged that the court was without jurisdiction for the reason that the indictment was in the name of the state of Oklahoma, and concluded with the words "against the peace and dignity of the state." The Constitution of the state (section 192, Bunn's Ed.) is as follows:

"The style of all writs and processes shall be 'The State of Oklahoma.' All prosecutions shall be carried on in the name and by the authority of the state of Oklahoma. All indictments, informations, and complaints shall conclude, 'against the peace and dignity of the state.'"

Under this section the form of the indictment is proper. The indictment contains an allegation that the acts complained of were contrary to the form of the statute in such cases made and provided. This means against the statute in force at the time the offense was committed. The defendant was certainly not deprived of any substantial protection by reason of the form of the pleading; and the district court of Pittsburg county had jurisdiction of the case, and we deem it unnecessary to do more than cite the authorities in which the same question has been disposed of. *Ex parte Lyda Howland, ante,* p. 142, 104 Pac. 927; *Ex parte Curlee,* 20 Okla. 192, 95 Pac. 414; *Higgins v. Brown,* 20 Okla. 355 (1 Okla. Cr. 33), 94 Pac. 703; *Packer v. People,* 8 Col. 362, 8 Pac. 564, and authorities there cited.

It is urged that the court abused its discretion in overruling the defendant's motion for a continuance. It appears that the prosecuting attorney agreed that the motion might be read as a deposition, and this was done as provided for in the Oklahoma procedure. In the case of *George Elmo Vance v. State, post,* p. 208, 105 Pac. 307, we held that this court would not review the action of the trial court in overruling motion for continuance unless

it clearly appears that the discretion was abused, and it does not so appear in this instance.

The next assignment is that an examination of the record will show that the court permitted the witnesses Gayley and Mabry to testify as to the contents of the treasurer's books, from notations made by them, in place of the book itself. The record discloses that each of these witnesses held copies of this book made by themselves, and they were permitted to refer to these copies to refresh their memory, and that the book itself was introduced. A witness may refer to a memorandum made by himself in order to refresh his memory, and we find no error in the court permitting these witnesses to refer to their copies.

Counsel urge that the court should have directed the jury to find the defendant not guilty for the reason that all the evidence in the case that tended to prove the defendant guilty was the circumstance that the money was paid to him, and that he failed to satisfactorily account for same, and that there should have been an instruction defining the punishment for petit larceny. The evidence is to the effect that the money was delivered to the defendant, that he failed to satisfactorily account for it, and that his books bore evidence of having been falsified in the items giving him credit for money paid out, and that he had taken credit for larger sums than he had paid on the vouchers on file. It was for the jury to determine whether he had converted the money with a fraudulent intent. His evidence was that he had paid the money on vouchers which he had lost and had failed to enter on his books. That was a question of fact to be determined by the jury. The proof is undisputed that the amount unaccounted for was more than $10. The court did not err in refusing to direct a verdict where there was competent testimony reasonably tending to prove the defendant guilty, and there is no error in refusing to give the instruction on petit larceny, when under all the proof, if he were guilty at all, he was guilty of taking a sum greater than $10.

The judgment of the trial court is affirmed.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.