# FRANK ADAMS v. STATE.

No. A-136.    Opinion Filed March 21, 1911.

Rehearing Denied April 18, 1911.

(114 Pac. 347.)

1.　　RAPE—Indictment—Sufficiency. Section 2353, Snyder's St., provides that: "Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances: * * * (3) Where she is incapable through lunacy or any other unsoundness of mind, whether temporary or permanent, of giving legal consent. (4) Where she resists but her resistance is overcome by force and violence." An indictment charging that defendant, "by means of force and violence overcoming the resistance of her * * * she then and there resisting said act and being then and there incapable through lunacy and other unsoundness of mind, of giving legal consent," held to charge sufficiently the crime so defined in the third subdivision; the allegation of force and violence and want of consent being immaterial and mere surplusage.

2.　　RAPE—Elements of Offense—Consent—Incapacity. The incapacity of the female as prescribed in the third subdivision of section 2353 extends to the act and all its incidents. The law implies incapacity to give consent, and this implication is conclusive. In such a case the female is to be regarded as resisting, no matter what the actual state of her mind may be at the time. The law resists for her.

3.　　APPEAL — Witnesses—Competency — Determination—Review. When a witness is objected to on the ground that he or she is incompetent by reason of want of intelligence, it is the province of the trial court to determine the witness' competency, and its decision will not be reviewed unless there is a clear abuse of discretion, or the court admits or rejects the witness upon an erroneous view of a legal principle.

4.　　RAPE—Evidence—Elements of Offense—Consent of Female. Upon a prosecution for rape, where it is alleged that the female did not have mental capacity to consent, evidence is properly admitted to show that she had been feeble-minded since childhood. Legal consent in this class of cases presupposes an intelligence capable of understanding the act, its nature, and possible consequences. This degree of intelligence may exist with an impaired or feeble intellect, or it may not.

5.　　RAPE—Question for Jury—Consent of Female. Whether a woman possesses mental capacity sufficient to give consent must, save in exceptional cases, be a question of fact for the jury.

(Syllabus by the Court.)

*Appeal from District Court, Pawnee County; J. T. Johnson, Judge.*

Frank Adams was convicted of rape, and appeals. Affirmed.

*E. M. Clark,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, JUDGE.   The plaintiff in error was indicted, tried, convicted, and sentenced to serve a term of 12 years in the penitentiary for the crime of rape.

The indictment, omitting the formal parts, is as follows:

"The jurors of the grand jury of said county and state, good and lawful men, having been first duly chosen, selected, drawn, summoned, returned, tried, impaneled, sworn, and charged, according to law, to diligently inquire into and true presentment make, within and for the body of said county, of all public offenses against said state and territory of Oklahoma committed or triable within said county, upon their oaths aforesaid, in the name and by the authority of said state of Oklahoma, do present and find that in said county of Pawnee, in the territory of Oklahoma, on the 3d day of August, in the year of our Lord one thousand nine hundred and seven, one Frank Adams, a person then and there being a male person, did, then and there, knowingly, wilfully, unlawfully, feloniously accomplish an act of sexual intercourse with one Ida Deshazer, a female person, and not the wife of the said Frank Adams, by means of force and violence of him, the said Frank Adams, overcoming the resistance of her, the said Ida Deshazer, she, the said Ida Deshazer, then and there resisting said act, and being then and there incapable through lunacy and other unsoundness of mind of giving legal consent, contrary to the form of the statute and the Constitution of the state of Oklahoma in such case made and provided, and against the peace and dignity of the state of Oklahoma."

The defendant filed a motion to set aside the indictment upon the grounds as follows, to wit:

"First.   That the said indictment shows upon its face duplicity, in this:   That an act done on the 3d day of August, 1907, could not have been done against the state of Oklahoma, of which this court will take judicial notice was not in existence at that time.

"Second. That the said indictment is not entitled in a court having authority to prosecute an offense against a different jurisdiction.

"Third. That the act charged as the offense is not clearly and distinctly set forth in ordinary and concise language without repetition.

"Fourth. That the act attempted to be charged as the offense is not clearly and distinctly set forth in such a manner as to enable a person of common understanding to know what is intended.

"Fifth. That the act attempted to be charged as the offense is not stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction according to the right of the case.

"Sixth. That said indictment charges two separate and distinct affirmative offenses and has allegations which are inconsistent with each other, and by reason of such duplicity the defendant is not clearly and distinctly charged in a manner required by law.

"Wherefore this defendant prays that he be not required to answer to a charge under said indictment, and that the same be set aside."

This motion was overruled and exception allowed, and counsel for defendant asked the court to consider the same filed as a demurrer, which was by the court granted. The demurrer was overruled and exception allowed. When the jury was impaneled, the defendant entered an objection to any testimony under the indictment upon the grounds as stated in the motion and demurrer. The objection was overruled and exception allowed.

These rulings of the trial court are complained of as erroneous, and it is argued that:

"The crime, if committed, was a violation of the decree of the sovereign power of the United States, proclaimed through its subordinate, the territory of Oklahoma. This defendant is prosecuted, not for violating a law of the territory of Oklahoma, but for violating the laws of the state of Oklahoma, which were not in existence at the time of the alleged act."

This question has been passed upon by this court in the case

of *Faggard v. State,* 3 Okla. Cr. 159, 104 Pac. 930, wherein Mr. Judge Owen, delivering the opinion of the court, said:

"It is next urged that the court was without jurisdiction for the reason that the indictment was in the name of the state of Oklahoma, and concluded with the words 'against the peace and dignity of the state.' The Constitution of the state (section 192, Bunn's Ed.) is as follows: 'The style of all writs and processes shall be "The State of Oklahoma." All prosecutions shall be carried on in the name and by the authority of the state of Oklahoma. All indictments, informations, and complaints shall conclude, "Against the peace and dignity of the state."' Under this section the form of the indictment is proper. The indictment contains an allegation that the acts complained of were contrary to the form of the statute in such cases made and provided. This means against the statute in force at the time the offense was committed. The defendant was certainly not deprived of any substantial protection by reason of the form of the pleading, and the district court of Pittsburg county had jurisdiction of the case, and we deem it unnecessary to do more than cite the authorities in which the same question has been disposed of. *Ex parte Lyda Howland,* 3 Okla. Cr. 142, 104 Pac. 927; *Ex parte Curlee,* 20 Okla. 192, 95 Pac. 414; *Higgins v. Brown,* 20 Okla. 355, 94 Pac. 703; *Id.,* 1 Okla. Cr. 33 [94 Pac. 703]; *Packer v. People,* 8 Colo. 362, 8 Pac. 564, and authorities there cited."

It is also argued that:

"The indictment charges resistance and incapability of resistance. This is duplicity, and is prejudicial because it enables the state to deny and affirm an element of the act charged."

Rape is defined in our Criminal Code as follows (section 2353, Snyder's St.):

"Rape is an act of sexual intercourse, accomplished with a female, not the wife of the perpetrator, under either of the following circumstances: 1st. Where the female is under the age of sixteen years. 2nd. Where the female is over the age of sixteen years and under the age of eighteen, and of previous chaste and virtuous character. 3rd. Where she is incapable through lunacy or any other unsoundness of mind, whether temporary or permanent, of giving legal consent. 4th. Where she resists but her resistance is overcome by force and violence. 5th. Where she is prevented from resistance by threats of immediate and great bodily harm,

accompanied by apparent power of execution. 6th. Where she is prevented from resisting by any intoxicating, narcotic, or anesthetic agent, administered by or with the privity of the accused. 7th. Where she is at the time unconscious of the nature of the act and this is known to the accused. 8th. Where she submits under a belief that the person committing the act is her husband, and this belief is induced by artifice, pretence or concealment practiced by the accused, or by the accused in collusion with her husband with intent to induce such belief. And in all cases of collusion between the accused and the husband of the female, to accomplish such act, both the husband and the accused shall be deemed guilty of rape."

The indictment charges the crime under the third subdivision of the statute, and the allegation that the act of sexual intercourse was accomplished by means of force and violence may be treated as surplusage. However, we believe that this allegation would be fully sustained by proof of carnal intercourse, where the female is incapable through lunacy or any other unsoundness of mind of giving legal consent. Upon such proof the law conclusively presumes that the carnal intercourse was by force and violence. The statute having declared that a female is incapable through lunacy or any other unsoundness of mind of giving legal consent, any carnal connection with such a female is necessarily against her consent and forcible. Rape is defined in the Penal Code of California in section 261, vol. 4, Kerr's Code, and the subdivisions of said section are almost identical with our statute. In the case of *People v. O'Brien,* 130 Cal. 1, 62 Pac. 297, the court said:

"The offense charged, as alleged in the information, and as defined in the instructions, consisted in the defendant's having sexual intercourse with the prosecutrix, 'who (it is alleged) was * * * prevented from resisting said act * * * by certain intoxicating, narcotic, and anæsthetic substance administered to her by and with the privity of' defendant. The information was demurred to on the ground of uncertainty—the point of the objection being that the substance administered to the prosecutrix was alleged to be 'at once intoxicating, narcotic, and anæsthetic,' and that the particular kind of substance is not named. But the objection, I think, is untenable. It is well settled that

'where the statute enumerates several acts disjunctively, which separately or together shall constitute the offense, the indictment, if it charges more than one of them, which it may do, and that, too, in the same count, should do so in the conjunctive' (*People v. Tomlison,* 35 Cal. 603; *People v. Thompson,* 111 Cal. 242 [43 Pac. 748]; *People v. Layshon,* 108 Cal. 440 [41 Pac. 480], and cases cited; Wharton's Criminal Pleading and Practice, §§ 162, 251); and this rule has been applied to cases where several intents are enumerated in the statute as elements of the offense (*People v. Ah Woo,* 28 Cal. 206; *Angel v. Commonwealth,* 2 Va. Cas. 231); and also to cases like the present, where different means of perpetrating the offense are enumerated (*Wingard v. State,* 13 Ga. 396), though in the last case, and in certain other exceptional cases, it may be that a disjunctive allegation is permissible (Pen. Code, § 954; Wharton's Criminal Pleading and Practice, § 161, *ad fin.*)."

In the case of *People v. Jailes,* 146 Cal. 301, 79 Pac. 965, the court in construing this section said:

"All these allegations might undoubtedly have been joined in one count, for there is nothing inconsistent in them, or the second count might have been entirely omitted, for testimony showing the existence of the facts alleged therein would have been sufficient to sustain a conviction under the allegations of the first count. *People v. Snyder,* 75 Cal. 323, 17 Pac. 208; *People v. Vann,* 129 Cal. 118, 61 Pac. 776."

Rape committed upon a female incapable through lunacy or any other unsoundness of mind of giving legal consent, or accomplished by means of force overcoming her resistance, is rape in the first degree. Section 2356, Snyder's St. There being no difference in degree and the punishment being the same, the defendant could not be prejudiced by reason of the allegation of force and violence. We are clearly of the opinion that the rulings of the trial court upon the sufficiency of the indictment should be sustained.

By the evidence on the part of the state, it appeared that the victim was a feeble-minded girl about 20 years of age. At the age of nine years she could not talk, but at that age she entered a deaf and dumb institute, attending eight terms of nine months each. She was partly deaf and partly dumb, but had learned to

interpret a question partly by sound and partly by lip reading. The record shows that, when she was sworn the first time as a witness, she apparently did not fully understand what was said to her, but when she was sworn the second time, she heard and understood fairly well the questions asked. She and other members of the family on the day charged were in Pawnee, attending a picnic. In the evening the defendant met her, invited her to take a buggy ride, and drove with her to a lonesome place in the timber, and there, by force overcoming her resistance, accomplished the act. The defendant was arrested at Pueblo, Colorado, two days later.

Dr. Walers testified in substance that she did not appear to have a developed mind; that the condition of her mind was more like that of a little girl 10 or 11 years old than that of an adult woman. Dr. Phillips testified that he had known her about 12 years, and from his knowledge of her and from his examination her mind appeared to be that of a child about 10 years of age. Her father and married sister testified that she had been feeble-minded since early childhood.

The defendant, testifying on his own behalf, denied the act, but admits that he hugged and kissed her and solicited the consent; that she refused, and he drove back to Pawnee.

It is assigned as error "that the court erred in permitting the witness Ida Deshazer to testify over the objection by defendant; exception being taken thereto by defendant as to her competency." When a witness is objected to on the ground that he or she is incompetent by reason of want of intelligence, it is the province of the trial court to determine the witness' competency, and its decision will not be reviewed unless there is a clear abuse of discretion, or the court admits or rejects the witness upon an erroneous view of a legal principle. Upon the question of this witness understanding the obligation of an oath, the trial court after a full examination held that she was competent. We are of the opinion that the court properly permitted the witness to testify.

5 Cr.—23

It is also assigned as error that the court erred in admitting evidence over the objection and exception of the defendant of non-expert witnesses as to the mental condition of prosecutrix. The record shows that the father and a married sister of prosecutrix were permitted to testify to facts, circumstances, and conduct on the part of the prosecutrix tending to show mental weakness from the time of her childhood. We are of opinion that this evidence was properly admitted to show that she had been feeble-minded from her childhood, and to show by reason of her unsoundness of mind she was incapable of giving legal consent. Legal consent presupposes an intelligence capable of understanding the act, its nature, and possible consequences. This degree of intelligence may exist with an impaired and feeble intellect, or it may not. Whether the victim possesses mental capacity sufficient to give legal consent must, save in exceptional cases, remain a question of fact for the jury. After a careful examination of the record, our conclusion is that the evidence abundantly supports the verdict, and that the defendant has had a fair and impartial trial in the manner prescribed by law.

The judgment of the district court of Pawnee county is therefore affirmed.

FURMAN, Presiding Judge, and ARMSTRONG, Judge, concur.