CARL BERRY et al. v. STATE.

No. A-6696.   Opinion Filed August 17, 1929.
(279 Pac. 982.)

Tom Payne, for plaintiffs in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J.  The plaintiffs in error, hereinafter called defendants, were convicted in the superior court of Okmulgee county of the crime of robbery with firearms, and each sentenced to serve a term of five years' imprisonment in the state penitentiary.

The information charged these plaintiffs in error jointly with one Blanche Berry, the wife of Carl Berry, with robbing W. H. Caswell and Mrs. W. H. Caswell of $810 in money and notes of the value of $435. On the trial the court instructed the jury to return a verdict of not guilty as to Blanche Berry.

Carl Berry and his wife, Blanche Berry, lived in the city of Henryetta at the time of this robbery. Carl Berry was employed as an automobile salesman previous to that time, but had worked in the lead and zinc mining business in connection with the smelters. The defendant E. E. Smith also lived in Henryetta and roomed at a rooming house known as the "Yale Rooms." At the time of this robbery he was employed in a smelter, and previous to the robbery had worked with the defendant Carl Berry, and they were well acquainted with

each other. Carl Berry also had held a commission as deputy sheriff of Okmulgee county some time previous to the commission of this offense.

W. H. Caswell and his wife, who were the victims of the robbery, lived at Spelter City in a one-room shack, and Caswell was connected with the mining business. The Berrys and the Caswells became acquainted with each other through the purchase of an automobile by the Caswells some two or three months before this robbery occurred. This automobile was purchased from the people for whom Berry was working. Some time after the purchase of this automobile, which was paid for by the Caswells in cash, Berry negotiated the sale of a note, that he held secured by a mortgage on an automobile, to the Caswells. This note amounted to $225, but Berry sold it to the Caswells for $200, and at the time the Caswells paid him the money, which was at their house, Mrs. Caswell took the money out from under a pillow on a couch, and Berry at that time saw the way the Caswells had of keeping their money, to wit, in a paper bag. After Berry had sold the Caswells the note, he told them to put the note in the bag with the money, and to always keep the note and the money together.

Some weeks later to this transaction, and just a short time before the robbery, according to the testimony of the Caswells, Berry borrowed $175 from them, giving a mortgage on his own Essex car to secure the payment of the same. Caswell gave him $150 in cash, discounting the loan in the sum of $25. This note of Berry's was also placed in the paper bag with the money, and at the time Berry told them that, if they were ever out with him, always to take the money and the notes with them, and they would be perfectly safe.

This robbery occurred on the 17th of September, 1926. On the evening previous to that date, Berry took the Caswells to the Free County Fair at Okmulgee, and when returning from the same it appears that they passed a man who evidently was drunk, driving an automobile, and the subject of intoxicating liquor was brought up, and Berry asked the Caswells if they ever drank any wine, and was told by them that they liked wine. Where-upon Berry suggested that he knew a man who had some very good wine; that the man had given him a drink of it the day before, and in the course of the conversation it was arranged that on the following evening the Berrys should take the Caswells out to this place, which was over in McIntosh county, to get some wine. On the trip after the wine in McIntosh county, the party was held up and robbed. Mrs. Caswell threw the paper sack, with the money and notes, in the weeds, and the robber failed to get that. Berry then proposed they return home, as they had no money to buy wine. Mrs. Caswell then told them that she had thrown the money and notes in the weeds, and Berry then proposed that they go on, which they did. When they reached the place where the wine was supposed to be kept, Berry got out of the car and left them for 10 or 15 minutes. On the way home they were held up again, and Mrs. Caswell again threw the money and notes in the paper sack in the weeds; but the robber, without paying much attention to searching the parties, went out into the weeds and found this sack, and got on the back of the car and forced them to drive him to Spelter City. The Caswells postively identified Smith as the person who robbed them both times. There is evidence in the record showing that Berry and Smith were well acquainted, and that they were seen together in the Yale Rooms the night before the robbery, and that Berry

drove by this garage where Smith worked on the evening of the robbery, and waved at some person in the garage, but it was not shown who that person was.

Smith's defense was an alibi, and Berry's that he was the innocent victim of a high-jacker. It is first urged by the defendant that the evidence is insufficient to support the verdict. This court has repeatedly held that, where the evidence is conflicting, and where there is competent evidence in the record to support the verdict of the jury the cause will not be reversed for insufficiency of the evidence. While the evidence on the part of the state is mostly circumstantial, it is sufficient to support the verdict of the jury. Under all the facts and circumstances shown by the evidence in this case, an honest jury could not have returned any other verdict, except guilty.

It is next contended that the information is insufficient to charge the crime of robbery. The charging part of the information is as follows:

"*  *  * That the said Carl Berry, Blanche Berry and E. E. Smith, at and in the county of Okmulgee and the state of Oklahoma, on the said 17th day of September, 1926, then and there being and then and there acting conjointly and together, did then and there knowingly, willfully, wrongfully, unlawfully and feloniously make an assault on and upon one W. H. Caswell and Mrs. W. H. Caswell with a certain weapon and firearm, to wit, a revolver, by pointing said weapon, firearm and revolver at the said W. H. Caswell and Mrs. W. H. Caswell, then and there placing and putting the said W. H. Caswell and Mrs. W. H. Caswell in fear of immediate injury to their lives and persons by threatening to shoot and kill them, the said W. H. Caswell and Mrs. W. H. Caswell with the said firearm and revolver, and did then and there by the force and fear aforesaid produce in the minds of them, the said W. H. Caswell and Mrs. W. H. Caswell, such fear of unlawful and im-

mediate injury to their lives and persons as was sufficient to and did overcome all resistance of the said W. H. Caswell and Mrs. W. H. Caswell, and while the said W. H. Caswell and Mrs. W. H. Caswell were under the influence of the fear aforesaid the said defendants, Carl Berry, Blanche Berry and E. E. Smith, and each of them, did then and there unlawfully, willfully, wrongfully and feloniously take, steal and carry away from the persons and possession and immediate presence of the said W. H. Caswell and Mrs. W. H. Caswell, the sum of $810.00, good and lawful money of the United States of America, and notes of the value of $435.00, good and lawful money of the United States of America, of the personal property of the said W. H. Caswell and Mrs. W. H. Caswell, and with the unlawful, willful, and felonious intent then and there of them, the said Carl Berry, Blanche Berry and E. E. Smith, and each of them, then and there to convert and appropriate said property to their own use and benefit and to permanently deprive the true owners thereof, contrary to the form of the statutes, in such cases made and provided, and against the peace and dignity of the State."

In this connection it is contended that the information is indefinite and uncertain, in that it does not sufficiently apprise the defendants of the crime attempted to be charged, so as to enable them to prepare a defense thereto. It is argued that the information both charges the defendants with robbery from the person and possession of W. H. Caswell and Mrs. W. H. Caswell, and also from the immediate presence of said persons, of money and notes, and it is contended that the defendants were placed on trial and required to defend against two separate and distinct charges—the first charge being that the defendants took the money and notes from the persons and possession of the Caswells; and, secondly, that they took the money and notes from the immediate presence of the said Caswells. In support of this contention de-

fendants cite the case of Slover v. Territory, 5 Okla. 506, 49 Pac. 1009, in which case an indictment was held to be defective because the charge was stated in the disjunctive, which is entirely different from the manner in which this charge is stated. Here the manner of committing the crime is stated in the conjunctive, to wit: "From the persons and possession and immediate presence of the said W. H. Caswell and Mrs. W. H. Caswell."

This court has repeatedly held that, where a statute enumerates several acts or ways disjunctively, which separately or together constitute the offense, the indictment or information, if it charges more than one of them, which it may do in the same count, should do so in the conjunctive. Adams v. State, 5 Okla. Cr. 352, 114 Pac. 347; Snoddy v. State, 30 Okla. Cr. 235, 235 Pac. 248; Campbell v. State, 31 Okla. Cr. 39, 237 Pac. 133.

The information in this case charges that the defendants took this money and property both from the persons and possession, and also from the immediate presence, of the said W. H. Caswell and Mrs. W. H. Caswell. Of course, if the defendants took it from the persons and possession of the Caswells, they also took it from their immediate presence, and the state under a charge of this kind would have a right to prove that the defendants took the money and notes from the immediate presence of the Caswells, even if they did not take it actually from the persons and possession of the said Caswells, because the charge is lodged in the conjunctive, instead of disjunctive, and the defendants were charged with the knowledge of the fact that the state might prove either a taking from the persons and possession, or from the immediate presence, or both, and the defendants could not claim surprise, or that they had been misled by a charge of this kind, made in the conjunctive.

It is also contended that the information is insufficient, in that it fails to make a particular description of the notes alleged to have been taken at the time of the robbery; that the description "notes of the value of $435.00" is not a sufficient description of said notes, in that it does not set out the dates, the amounts of the notes, the payees or payors on said notes, nor the dates when the notes became due. This description was sufficient to sustain a charge of robbery.

In the case of Hill v. State, 19 Okla. Cr. 406, 200 Pac. 253, 254, this court said:

"Generally speaking, * * * robbery is a larceny with aggravated features added, and the larcenous taking of money or goods of any value from the person of another, or in his presence against his will, by force, or by putting in fear, is robbery."

Section 1788, C. O. S. 1921, is as follows:

"When property is taken under the circumstances required to constitute robbery, the fact that the property was of trifling value does not qualify the offense."

In a robbery case, the value of the property taken is immaterial; it being sufficient merely that it has some value, although that value may be trifling. This court will take judicial notice of the fact that $810 in money was of some value; also that $435 in notes, alleged to be of the value of $435, was presumably of some value, and this not being a larceny case would be sufficient to sustain an allegation of value as to the commission of the crime of robbery, where it is only necessary to prove that the property itself was of trifling value.

It is next contended that the trial court erroneously permitted the state to impeach the defendant, Carl Berry. In this connection it is argued by the defendant that the

state had no right to cross-examine the defendant as to his associations with his codefendant, Smith, unless the defendant had touched that subject on the examination in chief. At page 325 of the case-made the defendant in his examination in chief was asked the following question by his counsel:

"Q. Was E. E. Smith here, your codefendant, the man that held you up and robbed you in McIntosh county or at Spelter City? A. No. sir."

The state on cross-examination asked the defendant if he was acquainted with Smith, and when he said he was he was asked how long he had known him, and the defendant was then asked if he had been with Smith the night before the robbery. The defendant objected to this cross-examination, for the reason that, the defendant having not opened up the subject, it was improper cross-examination. This examination was proper for at least two reasons: First, the state had a right to lay the predicate to impeach the testimony of the witness; and, secondly, because, when the defendant testified that his codefendant, Smith, was not the man who had robbed them, the state had a right on cross-examination to go into the question of his acquaintance with Smith, how often and when he had seen him, and what their relations were. The defendant denied that he had seen Smith the night before. The state then produced a witness on rebuttal who testified that she had seen the defendant and Smith, his codefendant, on the night previous together at Smith's room in the Yale Hotel. This court has held that, when the defendant presents himself as a witness and voluntarily takes the witness stand as a witness in his own behalf, he waives all privileges to which he is entitled by remaining silent, and subjects himself to the same rules of cross-examination and impeachment as any other

witness. Davis v. State, 35 Okla. Cr. 156, 249 Pac. 164; Radney v. State, 36 Okla. Cr. 240, 253 Pac. 913.

The association of the defendant Berry with the defendant Smith, immediately prior to the commission of this robbery, was a matter material to be inquired into, and the defendant's attorneys could not foreclose this line on cross-examination on the part of the state by failing and refusing to ask the defendant Carl Berry about it on his examination in chief. But in this case the defendant had opened up the subject by denying that his codefendant, Smith, was the man who had committed the robbery. This court has also held that the acts and conduct of the witness, variant from his testimony and inconsistent therewith, may be shown for the purpose of weakening the testimony of such witness. Gibbons v. Territory, 5 Okla. Cr. 212, 115 Pac. 129; Meadows v. State, 33 Okla. Cr. 330, 244 Pac. 58.

If the jury believed that the witness Carl Berry testified falsely as to his association with Smith prior to the commission of this crime, the jury had the right and privilege to believe that he probably testified falsely as to other material facts in the case, and the jury was at liberty to entirely disregard the testimony of Berry. It is apparent, therefore, that it was perfectly proper for the state, not only to cross-examine the defendant Berry upon the subject of his association with Smith immediately prior to the commission of this crime, and also that it was proper, if the defendant Berry denied any such intimate association as would probably convince the jury of his connection with Smith in the commission of this crime, for the state to impeach him as a witness, the same as it would have impeached any other witness on a material matter involved in the case.

The evidence convinces us beyond a reasonable doubt of the guilt of the defendant. Under the guise of friendship, Berry induced this old couple to go with him on a pretended trip to procure some wine for Mrs. Caswell, who had been sick. He induced them to carry their money and notes with them on this trip, and by a prearranged plan with his codefendant Smith they were robbed of their lifetime savings.

The errors of law complained of by the defendant not being fundamental, and the evidence being sufficient to support the verdict, the cause is affirmed.

EDWARDS, P. J., concurs.

DAVENPORT, J., absent.