## BUD HUCKLEBERRY v. STATE.

No. A—9384.   July 8, 1938.
(81 P. 2d 493.)

C. L. Hill and D. E. Ashmore, both of Wewoka, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Tom Finney, Asst. Atty. Gen., and Hubert Hargrave, Co. Atty., and Tommie Biggers, Asst. Co. Atty., both of Wewoka, for the State.

BAREFOOT, J. The defendant was charged with the crime of rape by force in Seminole county, was tried, convicted and sentenced to serve a term of 15 years in the penitentiary, and has appealed.

The first assignment of error is that the court erred in failing to sustain defendant's objection to the introduction of testimony by the state, for the reason that the information did not state a cause of action, charging said defendant

with the crime of rape in the first degree, and for the further reason that the information was duplicitous. The charging part of the information was as follows:

"That at and in the County of Seminole, and the State of Oklahoma, on or about the ——— day of 9th, 1936, October, Bud Huckleberry did then and there feloniously by means of force overcoming her resistance and by means of threats of immediate and great bodily harm, accompanied by apparent power of execution, preventing such resistance commit an assault upon the person of one Vesta Raper, a female person, not the wife of him, the said Bud Huckleberry, a male person, and did then and there by use of the force and threats of immediate and great bodily harm, aforesaid, overcoming her resistance, have sexual intercourse with and rape the said Vesta Raper."

The statute under which this information is based is section 2515, Okla. Stats., 1931 (Okla. St. Ann. tit. 21, sec. 1111), which is as follows:

"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances: * * *

"4th. Where she resists but her resistance is overcome by force and violence.

"5th. Where she is prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution."

It is contended that under the terms of the above information the "defendant was charged and tried upon two distinct charges." There was no demurrer filed, or motion to quash, the information in this case. The first objection was to the introduction of evidence. If it is the desire to question the sufficiency of the information, it is the duty of counsel to file a demurrer or motion to quash the information, which was not done in this case. But regardless of this fact, we are of the opinion that the information does not charge two offenses and is not duplicitous. The cases cited by defendant do not in our opinion bear out this con-

tention. They are: Slover v. Territory, 5 Okla. 506, 49 P. 1009; Elliott v. State, 4 Okla. Cr. 224, 111 P. 820, 140 Am. St. Rep. 683; Merchant v. State, 12 Okla. Cr. 360, 157 P. 272; Kime v. State, 14 Okla. Cr. 111, 167 P. 1159; Williams v. State, 16 Okla. Cr. 54, 180 P. 559. The case of Slover v. Territory has been distinguished in the case of Berry v. State, 44 Okla. Cr. 150, 279 P. 982, and the court refused to follow it in the case of Payne v. State, 53 Okla. Cr. 37, 6 P. 2d 1073.

The case of Short v. State, 42 Okla. Cr. 437, 276 P. 703, is decisive of this question. In this case the court says:

"An act of sexual intercourse is rape in the first degree without regard to the age of the female, when accomplished with a female, not the wife of the perpetrator, where she resists but her resistance is overcome by force and violence, or where she is prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution.

"Where an information alleges an act of sexual intercourse accomplished with a female under the age of 16 years by force and violence overcoming her resistance and by threats of immediate and great bodily harm, accompanied by apparent power of execution, such allegation constitutes a charge of rape in the first degree. The state may establish such charge by proof that the female was under the age of 16 years, or that the act of sexual intercourse was accomplished by force and violence overcoming the resistance of the female, or by threats of immediate and great bodily harm which prevented her resistance; the proof of either or both of such conditions is sufficient to establish rape in the first degree."

In cases of this character, the true test is, whether the act charges and the statute defines more than one crime, or whether it defines a single crime which may be committed in a number of different ways. Whether there is a readily perceived connection between the things charged. If there is no reasonable connection one with the other, and they are disconnected transactions, the information is du-

plicitous, otherwise it is not. State v. Hennessy, 114 Wash. 351, 195 P. 211. Applying this test to the case at bar, it will be readily seen that only a single crime is here charged which may be accomplished in different ways, and there is a readily perceived connection between the things charged. Under the authorities and the facts in this case the allegation that "she was prevented from resistance by threats of immediate and great bodily harm" might be considered as surplusage. State v. Morrison, 46 Mont. 84, 125 P. 649; Sowers v. Territory, 6 Okla. 436, 50 P. 257; Wines v. State, 7 Okla. Cr. 450, 124 P. 466; Adams v. State, 5 Okla. Cr. 347, 348, 114 P. 347; 31 C.J. 764; Dobbins v. State, 21 Okla. Cr. 403, 208 P. 1056.

Defendant's second assignment of error is, that the court erred in excluding competent, relevant, and material testimony offered by the defendant, and admitted incompetent, irrelevant and immaterial testimony introduced by the state, and that the verdict of the jury is contrary to the law and the evidence. The record reveals that many of the questions asked and of which complaint was made were not excepted to by the defendant. Many of the others reveal that the answers given were favorable to the defendant, and under the rules of this court, would not be subject to review unless the action of the court was found to be fundamental error. However, we have carefully examined the record, and do not find where the court committed any error in the permitting of evidence to be introduced or to the exclusion of the same which could have been prejudicial to the rights of the defendant.

The contention of defendant that the verdict of the jury is contrary to the law and the evidence cannot be sustained. The evidence on behalf of the state revealed that the defendant, Bud Huckleberry, Carl Stokes, Pearl Robertson, 17 years of age, and the prosecutrix, Vesta Raper, 16 years of age, lived near Konawa, in Seminole county; that on the evening of the 8th of October, 1936,

the defendant, who owned a one seated Ford coupe automobile, in company with Carl Stokes, accompanied the above-named young girls for an automobile ride through some of the oil fields near their home. The defendant was 23 years of age, and had been married and had two small children, but was not living with his wife at the time; that he was living with his father, and that Carl Stokes got in his car and went to the home of the prosecutrix about 7:30 p.m. and after getting her, returned and the three went to the home of Pearl Robertson, where she joined them. Prosecutrix was sitting next to defendant and Pearl Robertson sat on Carl Stokes' lap; they drove to different places in the oil field. Defendant bought two bottles of whiskey. The evidence was conflicting as to whether prosecutrix drank any of the liquor. She claimed that she did not. Some time after 12 and on the morning of October 9, 1936, they started for home. There is practically no conflict in the testimony up to this point. The prosecutrix, Vesta Raper, testified that when they left the oil lease and started home the defendant, who had been drinking considerably, was driving; that they first went to the home of Pearl Robertson, and she got out of the car; that she and the two boys then took Carl Stokes to his home, and then defendant and prosecutrix started to her home and defendant stopped his car by the side of the road, and she testified as follows:

"Q. Will you tell the jury what happened then? A. Yes, sir. Q. Without hurrying, now, the reporter has to take down all you say. A. Well, Bud pulled out to the side of the road and stopped and he just took hold of my bloomers and pulled them down, and I said 'Bud, what are you going to do?' and he said 'By God, I will show you what I am going to do.' And we started scratching and fighting. Q. What did you do? A. I jerked loose from him after we struggled a little while and run about 30 or 40 steps, and he caught me and he drug me back to the car and I wouldn't get in and he opened the door and put me back in. Q. How did he put you in? A. Forced me to get in the car, and then he got in and wrestled a while longer, and there was a car come along from the east and I hollered and screamed and

Bud put his hand over my mouth until the car passed, and I waved with one foot, but the car didn't stop, and then he went on with this intercourse. Q. Had he done anything with his clothes in the meantime? A. I do not think so. Q. Had he unbuttoned them, or disarranged them in any way? A. He had them unbuttoned, yes, sir. Q. You know what sexual intercourse is? A. Yes, sir. Q. Did he have sexual intercourse with you there? A. Yes, sir. Q. Tell the jury what you did, if you did anything, to keep him from that. A. Well, I wrestled and fought him for a long time, but still he went on and forced the deal anyway. Q. Did you use all the force you could? A. Yes, sir. Q. All the strength you had? A. Yes, sir. Q. How was he holding you in the car? A. He had his hands around the back of my waist, and had my feet around his waist, and had the top of my legs pressed up against his stomach and he was between my feet on his knees. Q. Did you get away from him any more? A. No, sir. Q. Did you try to? A. Yes, sir, I tried to. Q. How long would you say you were wrestling and scuffling before he accomplished his purpose? A. Something like two hours. Q. Do you know what time it was when you reached home? A. Yes, sir. Q. After he accomplished what he started out to do, did he take you home then? A. Yes, sir. Q. When you got to your home, what happened? A. He slowed down. He didn't drive out towards my house, he stayed in the road and I got out and the car was going right slow. Q. What did you do? A. I got to the gate and I called mother and she didn't answer and I got inside the gate and called again, and she answered, and I said, 'Mamma, I want you to have old Bud Huckleberry arrested because he raped me.' "

She and her mother then testified to going to a neighbor's house, and calling him to get assistance to go to town to see a doctor; that finally arrangements were made with a man who lived on their place to drive the car and take them to Konawa; that they arrived there about 3 o'clock in the morning. They went to the home of Dr. H. M. Reeder. He called in Dr. W. T. Huddleston. Both reputable physicians, and they testified that they examined Vesta Raper, the prosecutrix. They found from this examination the hymen was torn in two places, a bad tear about the middle, and one at the top. These torn places were bleeding and the

blood was from the wounds. Her clothing was torn and bloody. Her underclothing was torn and bloody and the blood came from the wounds. They testified to other facts corroborating the evidence that had been given by the prosecutrix which it is unnecessary to state.

Mrs. Anna Raper, the mother of prosecutrix, corroborated the evidence of prosecutrix after her arrival home, which she stated was 2 a. m., and also testified to having her examined by the family physician, Dr. Bynum of Shawnee, the day following, but Dr. Bynum did not testify in this case.

The defendant's testimony corroborated the prosecutrix up until the time they left the oil lease near 12 o'clock on the night of October 8th. He testified that when they left there they took the prosecutrix, Vesta Raper, to her home first; that they then took Pearl Robertson to her home and he then took Carl Stokes to the home of his brother, and that he then went to his home and arrived there between 12 and 1 a. m.

Pearl Robertson testified for the defendant and corroborated his testimony as to the taking of Vesta Raper home first, and then herself, and the two boys leaving her place with Joe Lee who had been there to see her sister. Joe Lee also swore to this. The defendant also testified that on the way home he and Carl Stokes met Edgar Hedgar, who was fixing a flat tire, and stopped and talked with him, and also passed Batt Ingram, Jr., at his home and stopped and conversed with him; both of these witnesses, testifying for the defendant, corroborated this testimony. The father and sister of defendant corroborated his testimony as to the time of his arrival at home at about 12:30 o'clock.

The state in rebuttal placed Carl Stokes upon the witness stand. He corroborated the prosecutrix, Vesta Raper, in every detail, testifying as she did to the taking of Pearl Robertson home first and then himself, and that the defendant,

Bud Huckleberry, and prosecutrix, Vesta Raper, left his home together in the Ford car a little after 12 o'clock. He denied the fact that Joe Lee had accompanied them from the home of Pearl Robertson, or that he was at that home, and denied they met the witnesses Edgar Hedgar and Batt Ingram, Jr., as testified to by them. He also testified of efforts to secure a statement from him different from that of the testimony he was now giving. From the above statement it will be seen that the evidence was highly contradictory. Under these circumstances, as has been often held by this court, the verdict of the jury will not be set aside where there is any evidence to support it. The action of the prosecutrix at the very time of leaving the presence of defendant; her trip to Konawa in the nighttime; the corroborating evidence of the condition of her clothing, and the evidence of her physical condition as found by the examination of two reputable physicians, all corroborate her testimony. We have often stated that cases of this character should be carefully examined. We are not unmindful of the words of Sir Matthew Hale, as quoted in defendant's brief:

"It is true that rape is a most detestable crime, and therefore severely to be punished, but it must be remembered that it is an accusation easily to be made, and hard to be proved, and harder to be defended by the party accused, though never so innocent."

But in this case, as before stated, the testimony of the prosecutrix was that defendant overcame her resistance by force, and that she used all the force within her power to resist, but that defendant, despite this resistance, accomplished his purpose. Her testimony is corroborated in the manner heretofore shown. From a reading of the record in this case it is clearly evident that perjury has been committed by some of the witnesses, and the wonder is that complaints were not filed. Frank Hinson v. State, 29 Okla. Cr. 210, 232 P. 955; Burtt v. State, 64 Okla. Cr. 68, 77 P. 2d 580.

The next assignment of error is that the court erred in giving instruction No. 2, which is as follows:

"Rape in the first degree, insofar as it is necessary to define the same in this case, is an act of sexual intercourse accomplished with a female not the wife of the perpetrator, where the female resists and her resistance is overcome by force and violence."

It is contended that the court should have set out the whole of section 2518, Okla. Stat. 1931 (Okla. St. Ann. tit. 21, § 1114). We do not think this was necessary. The defendant was charged with rape by force. The only issue involved in this case was whether or not the defendant had accomplished his purpose by force. It was unnecessary to have the jury consider the other paragraphs of this statute which were not involved in the issues in this case. It would have not been error for the court to have set out the whole of the statute but we see no reason as to why it was necessary to do so.

The objection to instruction No. 5, because it does not use the words "reasonable doubt," cannot be maintained. This instruction should be construed in connection with instructions Nos. 6, 7 and 8, which fully protected the rights of defendant with reference to the jury being convinced of defendant's guilt beyond a reasonable doubt before returning a verdict of guilty. A reading of the case of Harmon v. Territory, 15 Okla. 147, 79 P. 765, does not, in our opinion, bear out the contention of defendant.

Finding no substantial error in this case, the judgment of the district court of Seminole county is affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.