Dale Wray GROOM, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13923.

Court of Criminal Appeals of Oklahoma.

Oct. 12, 1966.

288

A. J. Schott, Stillwater, for plaintiff in error.

Charles L. Owens, Asst. Atty. Gen., for defendant in error.

NIX, Judge:

Plaintiff in Error, Dale Wray Groom, hereinafter referred to as defendant, was charged conjointly with LaVon William Austin (A–13,924) by information in the District Court of Payne County with the crime of Robbery with Firearms. The information alleged other felony convictions on Groom, but the state did not introduce any evidence of this. He was tried by a jury, found guilty, and sentenced to 15 years in the state penitentiary. From that judgment and sentence he has appealed to this Court by means of Post-Conviction Appeal,[1] granted by this Court in accordance with Title 22, Okl.St.Ann. § 1073, alleging numerous assignments of error.

1. This appeal was filed under the Post-Conviction Appeal Statute, Senate Bill #152, Title 22, Okl.St.Ann. § 1073, which became effective June 2, 1965; after defendant filed an application for same under No. A–13,651 on March 2, 1965. On June 17, 1965, this Court ordered the District Court of Payne County to hold an Evidentiary Hearing and return findings of fact to this Court regarding the allegation that defendant had placed his application for casemade forma pauperis in the Prison post-office to be verified and mailed to the District Court within the time allowed by the trial court; but that said petition was not mailed from the prison, and was not received by the District Court until the time for appeal had expired. No Evidentiary Hearing on this matter was held. Therefore, on August 6, 1965, this Court granted defendant's application for Post-Conviction Appeal and ordered the District Court of Payne County to prepare the casemade and forward it for filing to the Clerk of this Court.

In setting forth the Court's findings in this Memorandum Order, we quoted from the language from the special concurrence of the Honorable John A. Brett, in Holloway v. State, Okl.Cr., 365 P.2d 829, wherein he quoted from Dowd v. United States, 340 U.S. 206–210, 71 S.Ct. 262, 95 L.Ed. 215, in stating: "Both the trial courts and prison officials should be cooperative on the matter of perfecting appeals so as to avoid the charge of denial of equal protection of the law." And, "Neither should ever become active participants in the denial of the right to appeal, and thus * * * implements in denial of due process." This was in no way intended to apply to the learned trial judge, R. L. Hert, in the instant cause. He applied the letter of the law, and this was stated only because of the *unrefuted* allegation that the defendant had been denied his right to appeal by the delay in mailing his application for casemade forma pauperis to the District Court of Payne County, and for failure to verify same. With only these facts before the Court, we had no alternative but to accept these unrefuted allegations as the truth.

The defendant was charged conjointly with LaVon William Austin of the robbery of the Student Union at Stillwater, Oklahoma. More particularly, the facts presented by the state are primarily related by Jim Michael, who was employed during the time in question in the auditing department of the Student Union. He testified that at approximately 12 o'clock on February 6, 1963, he and a friend were sitting in his office at the Student Union Building, when the defendant came in the back door of the office armed with a sawed-off shotgun, which the defendant pointed directly at the witness. He was followed shortly by LaVon William Austin, who was armed with a .38 cal. revolver, which he stuck in the witness's face and demanded money. Austin further demanded that he open the safe. Mr. Michael finally convinced Austin that the safe had a time lock and that it was impossible to open it. It was during this time that defendant, Groom, dropped his shotgun and it discharged when it hit the floor, scattering pellets, one of which struck the witness in the leg. This noise attracted Calvin Vick and Larry Dechant, who were sitting in the coffee shop across the lobby from the auditor's office. When these two men ran to the scene, they were ordered into the office by Austin, who fired a shot into the floor to emphasize his order. Convinced that Michael couldn't open the safe, the defendant ordered everyone except Michael into a restroom and after Austin had cleared out the cash drawer, taking an amount later determined to be $39.75, the two made their departure.

The testimony of Vick and Dechant was somewhat in conflict regarding the description of the two men, and which one was carrying which gun, and who discharged the shotgun or pistol. The confusion seemed to be in mixing the two men up, not in the series of events as stated above.

The defendant did not take the stand or offer any evidence, other than that of a deposition of Irene Letha Ogden, which stated, in effect, that she was with defendant, Groom, and Austin, continuously from February 4, 1963, to about midnight on February 7, 1963. She stated that they drove to Long Beach, California and that they were somewhere in the vicinity of Shamrock, Texas at midnight between February 5th and 6th. The state read into the record, for the purpose of cross-examination, that they had attempted to question her in front of a notary in California, but that she had refused to answer any questions as advised by Mr. Schott, defendant's attorney.

■ Defendant's first allegation of error is that there is fatal variance between the information and the proof. The information reads:

" * * * take, steal and carry away from the *possession and person* of the said Jim Michael certain property that he had in his custody and control, to wit, * * *."

But that the state's proof shows that defendant took the money from the *"immediate presence"* of the victim. Whereas, the robbery statute, Title 21, O.S.1961, § 791, reads:

"Robbery is a wrongful taking of personal property in the possession of another, from his *person or immediate presence*, and against his will, accomplished by means of force or fear."

Defendant alleges that the question is simply stated as to whether or not the information which charges that the property was taken from *"the possession and person"* may be sustained by evidence indicating the property was taken not *from the person* but instead *from the immediate presence.*

■ Defendant relies heavily on the old case of Slover v. Territory of Oklahoma, 5 Okl. 506, 49 P. 1009, wherein the defendant was charged with robbery "from the person *or* immediate presence." The Court reversed the conviction on the grounds that the information alleging the crime was committed by taking either from the person or from the immediate presence, was defective in that it did not allege the particular act complained of with sufficient clarity to enable the appellant to be prop-

erly appraised of what he was charged with and allow him to prepare a defense. The Court stated:

> "The indictment in this case does not apprise the defendant against what he is to defend himself. It does not charge that the defendants took from the person of Mrs. Newport the property specified, nor does it charge that they took the property from her immediate presence, but charges that they did one thing or another, which can mean nothing. The inference from the language, as used, is not that the property was taken both from her person and from her immediate presence, but that it was taken either from her person or from her immediate presence, but which, the grand jury did not know and did not say. Consequently, they have left the defendants in as much doubt as they were themselves. An indictment, the averments of which are stated in the disjunctive, as a general rule, is fatally defective. Disjunctive allegations are those which charge that the defendant did one thing or another. The rule is that, whenever the word "or" would leave the averment uncertain as to which of two or more things is meant, it is inadmissible."

The difference in the instant case and the Slover case is readily apparent, and this point of law was discussed more fully in the case of Berry et al. v. State, 44 Okl. Cr. 150, 279 P. 982, wherein the same objections to the information was raised on appeal. The information in the Berry case read similar to the information in the instant cause. It read:

> "* * * take, steal and carry away *from the persons and possession and immediate presence* * * *."

Here the manner of committing the crime is stated in the conjunctive, whereas the indictment in the Slover case, supra, was stated in the disjunctive. The Berry case, supra, states:

> "This Court has repeatedly held that, where a statute enumerates several acts or ways disjunctively, which separately or together constitute the offense, the indictment or information, if it charges more than one of them which it may do in the same count, should do so in the conjunctive. Adams v. State, 5 Okl.Cr. (347,) 352, 114 P. 347; Snoddy v. State, 30 Okl.Cr. 235, 235 P. 248; Campbell v. State, 31 Okl.Cr. 39, 237 P. 133.

> The information in this case charges that the defendants took this money and property both from the persons and possession, and also from the immediate presence of the said W. H. Caswell and Mrs. W. H. Caswell. Of course, if the defendants took it from the persons and possession of the Caswells, they also took it from their immediate presence, and the state under a charge of this kind would have a right to prove that the defendants took the money and notes from the immediate presence of the Caswells, even if they did not take it actually from the persons and possession of the said Caswells, because the charge is lodged in the conjunctive, instead of disjunctive, and the defendants were charged with the knowledge of the fact that the state might prove either a taking from the persons and possession, or from the immediate presence, or both, and the defendants could not claim surprise, or that they had been misled by a charge of this kind, made in the conjunctive."

In the instant cause, the charge was made in the conjunctive. The principal difference is that the word "possession" was used in lieu of "immediate presence". While it has been said that the word "possession" is capable of no exact definition, and that efforts of courts and jurists to fix its meaning with some definiteness and certainty have availed little to clarify its ambiguity, it nevertheless has a variety of definitions and interpretations.

72 C.J.S. Possession p. 233, states:

> "It has been said that in common speech and in legal terminology no term is more ambiguous than the word 'possession,' whether considered in its relation to real property or personal property, and this is

especially true when it occurs in statutory provisions. The term has a variety of meanings, and disassociated from the context of a writing, and unexplained by surrounding circumstances, it is susceptible of different meanings, and may mean several things, or combinations of them. It is interchangeably used to describe actual possession and constructive possession, which often so shade into one another it is difficult to say where one ends and the other begins."

This Court is of the opinion that in this particular instance "possession" and "immediate presence" were synonymous. Jim Michael was solely in charge of the office and had possession of the money in the cash drawer, and this money was in his immediate presence in said drawer and in said office.

And, we are of the further opinion that an indictment or information charging a taking from the "person" may be supported by proof of a taking from the "presence", since such proof does not constitute a fatal variance. Under such statutes defining "robbery" so as to include a taking from the "possession" of another, an indictment alleging a taking from the person and possession of the victim may be supported by proof of taking from his possession only. 77 C.J.S. Robbery § 44, p. 484.

The test of fatal variance is whether the defendant was misled by the information and whether conviction under such information exposed him to the possibility of being later put in jeopardy again for the same offense. And under this test, this Court is of the opinion that there is no fatal variance between the information and the state's proof in the instant cause.

Further, under defendant's defense of alibi, that he wasn't there at the time the crime was committed, it could not possibly make any difference if the money was taken from the person or immediate presence of the victim.

Defendant's second allegation of error is that the change of testimony of one of the state's witnesses from his testimony given at the preliminary from testimony given at the trial denied him a fair trial.

This Court will not discuss this at any length, as all the witness did was establish a conflict in his testimony and we have ruled many times, as in Ryans v. State, Okl. Cr., 392 P.2d 501:

Where there is a conflict in the testimony, it is the exclusive province of the jury to weigh the evidence and ferret out the truth and if there is competent evidence to support their findings, this Court will not disturb the verdict on appeal.

Defendant's third allegation is that the trial court erred when refusing to give defendant's requested instruction number two, which requested assault and battery as an included offense of robbery. However, the record reflects that there were no exceptions by defendant to the trial court's instructions, and the law is well established, as in the case of Hayes v. State, Okl.Cr., 397 P.2d 524:

"Alleged error in giving of instructions will not be considered on appeal, in absence of an exception saved to the giving of the instruction unless so erroneous as to mislead and confuse the jury as to the issue of the case, or is of such fundamental nature as to deny defendant due process." See, also, Clark v. State, Okl.Cr., 383 P.2d 236; and Baxter v. State, Okl. Cr., 364 P.2d 705.

Instructions in a criminal case must be based upon the law as applied to the factual situation therein involved. Rice v. State, Okl.Cr., 368 P.2d 507.

Where the trial court has instructed within the law and evidence thus established, it is neither the court's duty

nor its right to instruct on speculative theories ·of counsel unsupported either by the evidence or the law.

This Court held in the case of Fennell· v. State, Okl.Cr., 396 P.2d 889:

> "It is not error for the court to refuse to give a requested instruction in the absence of any substantial evidence to support the giving of the same."

We have carefully examined the instructions and have reached the conclusion as stated in the case of Murphy v. State, 79 Okl.Cr., 31, 151 P.2d 69:

> "All of the instructions given by the court should be considered and where they fairly and fully present the issues involved, and no fundamental error occurs whereby the defendant has been prejudiced or deprived of a substantial right the case will not be reversed on appeal."

Defendant's fourth allegation is that the evidence was insufficient and the sentence excessive. Counsel again points out the conflict of the testimony, which was fully discussed under allegation two, above. The sentence of 15 years cannot be held excessive under the evidence in this case. This conviction could have carried the death sentence or life imprisonment.

We have very carefully considered the record in this cause, and the very exhaustive briefs filed by Mr. A. J. Schott, on behalf of the defendant; and by Mr. Charles Owens, Assistant Attorney General for the State of Oklahoma, and are of the opinion that this defendant had a fair and impartial trial, and that the evidence amply supports the verdict of the jury.

The judgment and sentence of the District Court of Payne County is hereby Affirmed.

BUSSEY, P. J., and BRETT, J., concur.