La Von William AUSTIN, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13924.

Court of Criminal Appeals of Oklahoma.

Oct. 19, 1966.

572

A. J. Schott, Stillwater, for plaintiff in error.

Charles L. Owens, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Plaintiff in Error, LaVon William Austin, hereinafter referred to as the defendant, was charged conjointly with Dale Wray Groom, (Groom v. State, Okl.Cr., 419 P.2d 286) by information in the District Court of Payne County with the crime of Robbery with Firearms. He was tried by a jury, found guilty, and sentenced to 15 years in the penitentiary. From that judgment and sentence he has appealed to this Court by means of Post-Conviction Appeal,[1] granted

---

[1] This appeal was filed under the Post-Conviction Appeal Statute, Senate Bill #152, Title 22, O.S.A., § 1073, which became effective June 2, 1965; after defendant filed an application for same under No. A–13,651 on March 2, 1965. On June 17, 1965, this Court ordered the District Court of Payne County to hold an Evidentiary Hearing and return findings of fact to this Court regarding the allegation that defendant had placed his application for case-made forma pauperis in the Prison post-office to be verified and mailed to the District Court within the time allowed by the trial court; but that said petition was not mailed from the prison, and was not received by the District Court until the time for appeal had expired. No Evidentiary Hearing on this matter was held. Therefore, on August 6, 1965, this Court granted defendant's application for Post-Conviction Appeal and ordered the District Court of Payne County to prepare the casemade and forward it for filing, to the Clerk of this Court.

In setting forth the Court's findings in this Memorandum Order, we quoted the

by this Court in accordance with Title 22, O.S.A. § 1073, alleging numerous assignments of error.

The defendant was charged conjointly with Dale Wray Groom of the robbery of the Student Union at Stillwater, Oklahoma. More particularly, the facts presented by the state are primarily related by Jim Michael, who was employed during the time in question in the auditing department of the Student Union. He testified that at approximately 12 o'clock on February 6, 1963, he and a friend were sitting in his office at the Student Union Building, when Groom came in the back door of the office armed with a sawed-off shotgun, which he pointed directly at the witness. He was followed shortly by the defendant, Austin, who was armed with a .38 cal. revolver, which he stuck in the witness' face and demanded money. Austin further demanded that he open the safe. Mr. Michael finally convinced Austin that the safe had a time lock and that it was impossible to open it. It was during this time that Groom dropped his shotgun which discharged when it hit the floor, scattering pellets, one of which struck the witness in the leg. This noise attracted Calvin Vick and Larry Dechant, who were sitting in the coffee shop across the lobby from the auditor's office. When these two men ran to the scene, they were ordered into the office by the defendant, who fired a shot into the floor to emphasize his order. Convinced that Michael couldn't open the safe, Groom ordered everyone except Michael into a restroom and after the defendant had cleaned out the cash drawer, taking an amount later determined to be $39.75, the two made their departure.

The testimony of Vick and Dechant was somewhat in conflict regarding the description of the two men, and which one was carrying which gun, and who discharged the shotgun or pistol. The confusion seemed to be in mixing the two men up, not in the series of events as stated above.

The defendant did not take the stand or offer any evidence, other than that of a deposition of Irene Letha Ogden, which stated, in effect, that she was with Groom, and the defendant, Austin, continuously from February 4, 1963, to about midnight on February 7, 1963. She stated that they drove to Long Beach, California and that they were somewhere in the vicinity of Shamrock, Texas at midnight between February 5th and 6th. The state read into the record, for the purpose of cross-examination, that they had attempted to interrogate the witness in the presence of a notary in California, but she refused to answer any questions, as advised by Mr. Schott, defendant's attorney.

In rebuttal, the state called Hardy Lee Williams, a brother of the witness, Irene Letha Ogden. He testified that on the night of the robbery his sister, Groom, and the defendant came to his house in Drumright about 6 or 6:30 that evening. That the two boys changed clothes, and left. That Irene stayed there, and the boys returned sometime after he had retired, which was 11:30 or 12. That Irene stuck her head in the door and told him they were leaving. He found out later that she was in California.

---

language from the special concurrence of the Honorable John A. Brett, in Holloway v. State, Okl.Cr., 365 P.2d 829, wherein he quoted from Dowd v. United States ex rel. Cook, 340 U.S. 206–210, 71 S.Ct. 262, 95 L.Ed. 215, in stating: "[B]oth the trial court and prison officials should be cooperative on the matter of perfecting appeals so as to avoid the charge of denial of equal protection of the law." And, "[N]either should ever become active participants in the denial of the right to appeal, and thus as implements in denial

of due process." This was in no way intended to apply to the learned trial judge, R. L. Hert, in the instant cause. He applied the letter of the law, and this was stated only because of the *unrefuted* allegation that the defendant had been denied his right to appeal by the delay in mailing his application for casemade forma pauperis to the District Court of Payne County, and for failure to verify same. With only these facts before the Court, we had no alternative but to accept these unrefuted allegations as the truth.

Defendant's 1st, 4th and 5th allegations of error are identical with the allegations raised in the companion case, Groom v. State, Okl.Cr., 419 P.2d 286, and in both cases the same principles of law would apply.

Defendant's first allegation of error is that there is fatal variance between the information and the proof. The information reads:

"* * * take, steal, and carry away from the *possession and person* of the said Jim Michael certain property that he had in his custody and control, to wit: * * *."

But that the state's proof shows that defendant took the money from the *"immediate presence"* of the victim. Whereas, the robbery statute, Title 21, O.S.1961, § 791, reads:

"Robbery is a wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

Defendant alleges that the question is simply stated as to whether or not the information which charges that the property was taken from *"the possession and person"* may be sustained by evidence indicating the property was taken not from the person but instead from the *immediate presence.*

Defendant relies heavily on the old case of Slover v. Territory of Oklahoma, 5 Okl. 506, 49 P. 1009; wherein the defendant was charged with robbery "from the person *or* immediate presence." The Court reversed the conviction on the grounds that the information alleging the crime was committed by taking either from the person or from the immediate presence, was defective in that it did not allege the particular act complained of with sufficient clarity to enable the appellant to be properly apprised of what he was charged with and allow him to prepare a defense. The Court stated:

"The indictment in this case does not apprise the defendant against what he is to defend himself. It does not charge that the defendants took from the person of Mrs. Newport the property specified, nor does it charge that they took the property from her immediate presence, but charges that they did one thing or another, which can mean nothing. The inference from the language, as used, is not that the property was taken both from her person and from her immediate presence, but that it was taken either from her person or from her immediate presence, but which, the grand jury did not know and did not say. Consequently, they have left the defendants in as much doubt as they were themselves. An indictment, the averments of which are stated in the disjunctive, as a general rule, is fatally defective. Disjunctive allegations are those which charge that the defendant did one thing or another. The rule is that, whenever the word 'or' would leave the averment uncertain as to which of two or more things is meant, it is inadmissible."

The difference in the instant case and the Slover case, supra, is readily apparent, and this point of law was discussed more fully in the case of Berry et al. v. State, 44 Okl. Cr. 150, 279 P. 982, wherein the same objections to the information were raised on appeal. The information in the Berry case read similar to the information in the instant cause. It read:

"* * * take, steal and carry away from the persons and possession and immediate presence * * *."

Here the manner of committing the crime is stated in the conjunctive, whereas the indictment in the Slover case, supra, was stated in the disjunctive.

The Berry case, supra, states:

"This Court has repeatedly held that, where a statute enumerates several acts or ways disjunctively, which separately or together constitute the offense, the indictment or information, if it charges more than one of them, which it may do in the same count, should do so in the conjunctive. Adams v. State, 5 Okl.Cr. 347, 352, 114 P. 347; Snoddy v. State, 30 Okl.Cr.

235, 235 P. 248; Campbell v. State, 31 Okl.Cr. 39, 237 P. 133.

The information in this case charges that the defendants took this money and property both from the persons and possession, and also from the immediate presence, of the said W. H. Caswell and Mrs. W. H. Caswell. Of course, if the defendants took it from the persons and possession of the Caswells, they also took it from their immediate presence, and the state under a charge of this kind would have a right to prove that the defendants took the money and notes from the immediate presence of the Caswells, even if they did not take it actually from the persons and possession of the said Caswells, because the charge is lodged in the conjunctive, instead of disjunctive, and the defendants were charged with the knowledge of the fact that the state might prove either a taking from the persons and possession, or from the immediate presence, or both, and the defendants could not claim surprise, or that they had been misled by a charge of this kind, made in the conjunctive."

In the instant cause, the charge was made in the conjunctive. The principal difference is that the word "possession" was used in lieu of "immediate presence".

While it has been said that the word "possession" is capable of no exact definition, and that efforts of courts and jurists to fix its meaning with some definiteness and certainty have availed little to clarify its ambiguity, it nevertheless has a variety of definitions and interpretations.

72 C.J.S. at pg. 233, on "Possession", states:

"It has been said that in common speech and in legal terminology no term is more ambiguous than the word 'possession,' whether considered in its relation to real property or personal property, and this is especially true when it occurs in statutory provisions. The term has a variety of meanings, and disassociated from the context of a writing, and unexplained by surrounding circumstances, it is susceptible of different meanings, and may mean several things, or combinations of them. It is interchangeably used to describe actual possession and constructive possession, which often so shade into one another that it is difficult to say where one ends and the other begins."

This Court is of the opinion that in this particular instance "possession" and "immediate presence" were synonymous. Jim Michael was solely in charge of the office and had possession of the money in the cash drawer, and this money was in his immediate presence in said drawer and in said office.

And, we are of the further opinion that an indictment or information charging a taking from the "person" may be supported by proof of a taking from the "presence", since such proof does not constitute a fatal variance. Under such statutes defining "robbery" so as to include a taking from the "possession" of another, and indictment alleging a taking from the person and possession of the victim may be supported by proof of taking from his possession only. 77 C.J.S. § 44 Robbery pg. 484.

The test of fatal variance is whether the defendant was misled by the information and whether conviction under such information exposed him to the possibility of being later put in jeopardy again for the same offense. And, under this test, this Court is of the opinion that there is no fatal variance between the information and the state's proof in the instant cause.

Further, under defendant's defense of alibi, that he wasn't there at the time the crime was committed, it could not possibly make any difference if the money were taken from the person or the immediate presence of the victim.

Counsel urges under Proposition Two, that, although this defendant's motion for a severance from his co-defendant was granted, and although the two had separate trials, this defendant was denied a separate and fair trial. It is his contention that the

juries were selected in both the Groom case and the Defendant Austin's case on the same day; and that thereafter the trial judge dismissed the jurors who were to hear this defendant's case and sent them home with the admonition that they refrain from becoming informed in any manner as to the testimony or the outcome of the Groom case, which the court intended to try first.

 Counsel contends that the trial court should have granted his motion to strike this defendant's case from trial assignment at the same jury term with the Groom case. He asserts that Austin was prejudiced by the Groom case, in that he received an identical sentence of Fifteen Years. Counsel implies, but brings this Court no proof or authorities of law to support the implied charge of misconduct of the jury. The record reflects that the trial judge carefully questioned the jury panel, stating:

"Ladies and Gentlemen of the jury, you will recall when you were sworn in yesterday we informed the jury that we were trying two different defendants on the same charge but in separate cases, and that we were trying to keep from this jury anything that occurred in the trial of the other case and the other case was the case of The State of Oklahoma vs. Dale Wray Groom and this case is the case of The State of Oklahoma vs. LaVon William Austin; Now, you were released along in the forenoon of yesterday with instruction to report back today, and I now inquire have any of you learned anything about the trial of the case yesterday? If so, hold up your hands. Let the record show that no one held up their hand. Do you have any different information than you had when we recessed yesterday about this case? If so, hold up your hands. Let the record show that no hands were held up."

In view of this inquiry made by the trial court, and the response given by the jury; and absent any showing to the contrary, this Court cannot reverse a case for speculation that prejudice existed. There are no authorities cited to support this question of law, and this Court has repeatedly held:

"It is necessary for counsel for plaintiff in error not only to assert error, but to support his contentions by both argument and the citation of authorities. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this court will not search the books for authorities to support the mere assertion that the trial court has erred."

Fryar v. State, Okl.Cr., 385 P.2d 818.

Defendant's Third Proposition of error is that the testimony of one of the witnesses of an "extra-judicial identification" of the defendant in a police line-up constituted reversible error. He cites the case of Cothrum v. State, Okl.Cr., 379 P.2d 860, as authority for his contention. The testimony of the witness begins at pg. 110 of the case-made, as follows:

"MR. TOURTELLOTTE: Let the record indicate that the witness pointed to the defendant, LaVon William Austin.

Q. Mr. Michael, did you have occasion to see this gentlemen after the offense occurred?

A. Yes, I did.

Q. And where was that?

A. I picked him out of a line-up here.
* * *

MR. SCHOTT: If the Court please, May I approach the bench?

(Thereupon, the following proceedings were had at the bench and out of the hearing of the Jury:)

MR. SCHOTT: Before I make this Motion I want to call the Court's attention to the case of Cothrum v. State in 379 P. 2nd at 860, reported in the Oklahoma Bar Journal of March 9, 1963, which has to do with Extra-Judicial Identification, and based on this case I now move that this trial be declared a mistrial on the grounds and for the reason that the witness has just testified that he has identified the defendant, Mr. Austin, in a

line-up, and that an identification in such a way has been held to be reversible error by the Court of Criminal Appeals of the State of Oklahoma.

THE COURT: You are getting on thin ice, Mr. Tourtellotte, but I'm going to overrule the Motion for a mistrial, with exceptions allowed.

(Thereupon, the proceedings were continued in the hearing of the jury, as follows:)

Q. Mr. Michael, were you afraid that evening?

A. Yes, Sir.

Q. Did you feel for your life?

A. I did.

MR. SCHOTT: If the Court please I would like to ask the Court that the Court direct the Jury to disregard the statements made by the witness in regard to the matter which I previously objected to and to not take it into consideration as though it had not been spoken.

THE COURT: The record should indicate that you move to instruct the jury to disregard the question and answers that were made in regard to Extra-Judicial Identification. Ladies and Gentlemen of the Jury, that Motion will be sustained as to the question that was asked of the witness if he had identified the defendant at some other time and place and the witness answered yes and stated when and where it was, and the defendant has moved that that be stricken from the record and the Jury to disregard the question and answers and that is sustained and you will act accordingly and disregard that question and answer.

Proceed.

MR. TOURTELLOTTE: That will be all."

In the Cothrum case, supra, the situation was an aggravated one. The identification in the police line-up was mentioned repeatedly, by two different witnesses upon persistent questioning of the county attorney, and was admitted, over objection, into evidence.

In the instant case, we have a completely different situation. The trial judge sustained the objection lodged by defense counsel before the witness could complete his first sentence concerning the police line-up. The trial judge went further and thoroughly and meticulously admonished the jury to disregard the question and answer.

This Court held in the case of Thompson v. State, 6 Okl.Cr. 50, 117 P. 216:

"Where a witness voluntarily states a matter which should not be introduced in evidence, and the court promptly excludes the testimony given by the witness and instructs the jury not to consider it in their deliberations, such voluntary testimony of the witness, although improper, will not ordinarily be ground for the reversal of a conviction."

And, in the recent case of Gonzales v. State, Okl.Cr., 388 P.2d 312:

"Before conviction can be reversed for error in admission or rejection of evidence or instructions, appellate court must determine that appellant was injured thereby, and question of appellant's guilt or innocence of offense charged must be considered."

The law is very clear in Oklahoma on reception of hearsay testimony, and the trial judge, by excluding the witnesses' answer from the jury, did all that was required of him.

Defendant's fourth allegation is that the trial court erred when refusing to give defendant's requested instruction number 2, which requested assault and battery as an included offense of Robbery. However, the record reflects that there were no exceptions by defendant to the trial court's instructions, and the law is well established, as in the case of Hayes v. State, Okl.Cr., 397 P.2d 524:

"Alleged error in giving of instructions will not be considered on appeal, in absence of an exception saved to the giving of the instruction unless so erroneous as to mislead and confuse the jury as to

the issue of the case, or is of such fundamental nature as to deny defendant due process."

See, also, Clark v. State, Okl.Cr., 383 P.2d 236; and Baxter v. State, Okl.Cr., 364 P.2d 705.

Instructions in a criminal case must be based upon the law as applied to the factual situation therein involved. Rice v. State, Okl.Cr., 368 P.2d 507.

Where the trial court has instructed within the law and evidence thus established, it is neither the court's duty nor its right to instruct on speculative theories of counsel unsupported either by the evidence or the law.

This Court held in the case of Fennell v. State, Okl.Cr., 396 P.2d 889:

"It is not error for the court to refuse to give a requested instruction in the absence of any substantial evidence to support the giving of the same."

We have carefully examined the instructions in the instant case, and have reached the conclusion as stated in the case of Murphy v. State, 79 Okl.Cr. 31, 151 P.2d 69:

"All of the instructions given by the court should be considered and where they fairly and fully present the issues involved, and no fundamental error occurs whereby the defendant has been prejudiced or deprived of a substantial right the case will not be reversed on appeal."

Defendant's fifth allegation is that the evidence was insufficient and the sentence excessive. Counsel points out the conflict of the testimony of one of the state's witnesses from his testimony given at the preliminary, from testimony given at the trial, denied him a fair trial.

This Court will not discuss this at any length, as all the witness did was establish a conflict in his testimony and we have ruled many times, as in Ryans v. State, Okl.Cr., 392 P.2d 501: Where there is a conflict in the testimony, it is the exclusive province of the jury to weigh the evidence and ferret out the truth and if there is competent evidence to support their findings, this Court will not disturb the verdict on appeal.

The sentence of Fifteen Years cannot be held excessive under the evidence of this case. This conviction could have carried the death sentence or life imprisonment.

We have very carefully considered the record in this cause, and the very exhaustive briefs filed by Mr. A. J. Schott on behalf of the defendant; and by Mr. Charles Owens, Assistant Attorney General for the State of Oklahoma; and are of the opinion that this defendant had a fair and impartial trial, and that the evidence amply supports the verdict of the jury.

The judgment and sentence of the District Court of Payne County is hereby affirmed.

BUSSEY, P. J., and BRETT, J., concur.