Roland Donald **WHITE**, Appellant,

v.

**The STATE of Oklahoma**, Appellee.

No. F–73–197.

Court of Criminal Appeals of Oklahoma.

Jan. 23, 1974.

Bay, Hamilton, Renegar & Lees, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Roland Donald White, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court, Oklahoma County, Case No. CRF–72–1278, for the offense of Burglary in the Second Degree; his punishment was fixed at four (4) years imprisonment, with the last two (2) years being suspended, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, James Brotherton testified that he was in the automobile repair business in partnership with his brother, Ronald Brotherton, at 21st and South Agnew in Oklahoma City; that on May 24, 1972, he closed up the garage at approximately 7:00 p.m., locking the doors. He went to town, picked up his wife, and on returning home drove past the garage. He observed defendant's car parked near the garage and defendant and two other persons walking down tne street. He testified that the defendant had been in the garage on two or three prior occasions and they had traded automobile parts. He went around the corner and observed defendant shaking the door to the garage. He took his wife home, picked up his son, and returned to the garage. He observed the defendant and two other persons coming out of the door of the garage. One of the persons was carrying an oil pan. They got into defendant's automobile and drove away. He examined the building and found that the lock hasp on the door had been removed and that pistons and oil pans and

two cylinder heads were missing from the garage.

The following morning, defendant, along with two juveniles, were at the garage when he arrived. He lost his temper and hit defendant. A police officer who was present, separated them and defendant was taken to jail.

Layton Brotherton, James' father, testified that he went to the garage on the evening in question and discovered that the lock hasp had been twisted off and certain merchandise was missing. The following morning defendant came into the garage with two juveniles and asked if his son was there. He replied that he was not there, but that he wanted to see defendant about breaking into the garage the night before. Defendant and the two juveniles got into defendant's car and left. Sergeant Douglass, who overheard the conversation, went after them and brought them back to the garage. Shortly thereafter, his son arrived and knocked defendant down.

Officer Douglass testified that he went to the garage on the morning of May 25th to drink coffee. Defendant and two juveniles were present at the time when Douglass arrived. Mr. Brotherton stated: "We got broke into last night and these are the men that did it." Defendant and his two companions left the garage and drove away. After having a short conversation with Mr. Brotherton, he proceeded after them and had them return to the garage. He did not observe the altercation between James Brotherton and the defendant, but did observe defendant kneeling on the floor. Defendant and the two juveniles were subsequently placed under arrest and transported to the police station.

Detective Behrens testified that he investigated the burglary on the evening in question, arriving at approximately 8:50 p. m. He observed that the lock hasp had been broken from the front door.

Defendant testified that he had been to Brotherton's garage a number of times, buying things from Mr. Brotherton and swapping him various items of automobile assemblies. On the afternoon of May 24th he went to the garage to obtain a lifter and two push rods. Ronnie stated that James was not there, but would probably be there that night. He returned some time after 7:00 p.m. He went to a nearby automobile supply store near Brotherton's garage known as Chilton's. Finding that it was closed, he walked down to the Brotherton garage and shook the door. He felt certain that Mr. Brotherton would be back later and they decided to go somewhere and get a coke. He returned in approximately 45 minutes and again shook the door and hollered. When no one answered, they got into the car and drove away. He denied that he or his companions broke into the building. He returned to the garage the following morning to get his lifters and when James arrived he struck him, knocking him to the ground. He admitted convictions for Public Drunk, Petty Larceny, and Molesting a Standing Vehicle.

In rebuttal, Frank Fisher testified that he was the manager of a security burglar alarm company; that on May 24, 1972, the burglar alarm at Chilton's Auto Supply was set at 8:57 p.m. indicating that the store had been open until that time.

Mark Brotherton, James' son, testified that he went to the garage with his father on the evening in question between 8:30 and 9:00 p.m. He testified that he could not identify any of the individuals that were at the garage because it was too dark.

Ronald Brotherton testified that defendant had been in the garage on May 24th. He denied defendant asked anything about a lifter, nor did he tell defendant that he should return later that evening.

■■ The first proposition asserts that the verdict is not supported by the evidence. We are of the opinion that the State's evidence, if believed, was sufficient to support the verdict of the jury. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty as charged, the

**1114**

Court of Criminal Appeals will not interfere with the verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. West v. State, Okl.Cr., 484 P.2d 538.

The final proposition contends that the trial court erred in failing to grant defendant's Motion for Mistrial when the State attempted to present improper evidence. Defendant first argues, under this proposition, that the State attempted to introduce into evidence the follow-up report of the police investigation by Sergeant Douglass. We need only observe that the trial court sustained defendant's objection and that the report was not introduced into evidence.

Defendant next argues that he was harpooned by the testimony of Layton Brotherton. The record reflects the following transpired during examination of Mr. Brotherton:

"Q. Mr. Brotherton, had you seen Mr. White recently before the time that you saw him on May 25th that morning he came in?

A. Yes, I had. I had seen him I think it was the day before that.

Q. Where had you seen him the day before that?

A. He was in the shop and there was a cattle man down there, buyer come in, and he said Layton, you'd better watch them. Them guys are staking you out.

MR. HAMILTON: If the Court please, object and move for a mistrial and ask the Court to admonish the jury.

THE COURT: Motion for mistrial denied, exception allowed. The jury is admonished to disregard the last statement and the witness is admonished not to volunteer anything. Just answer questions counsel puts to you, but again the jury is admonished to disregard the last statements. Put it out of your minds. Ask your next question." [Tr. 56–57]

In Austin v. State, Okl.Cr., 419 P.2d 569, we stated in the eighth Syllabi:

"Where a witness voluntarily states a matter which should not be introduced in evidence and the court promptly excludes the testimony given by the witness and instructs the jury not to consider it in their deliberations, such voluntary statement of the witness, although improper, will not ordinarily be ground for the reversal of a conviction."

The judgment and sentence is accordingly affirmed.

BLISS, P. J., and BRETT, J., concur.