**Paul Robert TAYLOR, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17061.**

Court of Criminal Appeals of Oklahoma.

Sept. 27, 1972.

William C. Page, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

OPINION

SIMMS, Judge:

Appellant was informed against in the District Court of Oklahoma County for the offense of Unlawful Possession of a Barbiturate, tried before a jury, found guilty of the charge contained in the information, however, the jury stated in its

verdict that they were unable to agree upon the punishment, and left the same to be assessed by the court. Thereafter, appellant was sentenced to a term of one year in the Oklahoma County Jail upon the jury verdict. From the judgment and sentence in the case, appellant has perfected a timely appeal to this Court.

Neither appellant nor the state has filed a brief in the appeal, and therefore, the Presiding Judge of this Court has ordered the appeal Summarily Submitted to be reviewed for prejudicial, fundamental, or constitutional error only.

Evidence adduced at trial indicated that on May 15, 1971, shortly after noon, the appellant was observed by an Oklahoma City Police Officer operating a motor vehicle near the intersection of McKinley and 44th. At this location the officer observed the right front wheel of the automobile to be wiggling and it appeared to the officer, according to his testimony, that the wheel was about to come off the vehicle. Thereupon, the officer turned on his red light and stopped the vehicle approximately twenty-five feet from the intersection. The officer alighted from the police car and approached the appellant's vehicle, and the driver identified himself to be Paul Robert Taylor, the appellant.

Upon appellant's failure to produce a drivers license, he was requested by the officer to step back to the scout car. At this time, appellant apparently became very excited over the fact that he did not know that the wheel was apparently coming off and he opened the trunk of the vehicle and removed a jack handle and went to the right front of the vehicle and began to jack it up.

Prior to the vehicle being stopped, the officer who had stopped the vehicle had requested a back-up unit. When the back-up unit arrived, the appellant was requested again to come back to the scout car. After appellant was seated in the scout car the back-up officer walked up to the vehicle and advised the arresting officer that he, the back-up officer, had found some pills underneath the right front of the vehicle. At which time appellant was advised of his constitutional rights.

After being advised of his rights, appellant told the officers that he wanted to tell his side of the story as to why he had thrown the pills underneath the vehicle. At this time the officer re-advised appellant of his rights, appellant acknowledged that he understood those rights, that he wanted to tell his side of the story.

Appellant, according to the testimony of the officers, stated that the reason he had thrown the four pills under the car was that "If these officers found them on his person that he would be arrested and taken to the Oklahoma City Jail and booked on a charge of Possession of Barbiturates" (Tr. 9).

The back-up officer testified that on arriving at the scene, he saw appellant in front of the car in the process of jacking it up. At which point appellant was seen to reach into his front shirt pocket and throw something. The officer related that he couldn't tell what it was so he got out of his unit, walked over to where appellant had been standing, looked under the car, and observed four small red pills lying on the ground.

It was stipulated at trial by and between the appellant and the State of Oklahoma that the four red pills thrown under the car by appellant were in fact, barbiturates. (Tr. 13).

Appellant testified in his own behalf before the jury to the effect that the seconal pills he had thrown under the automobile had been obtained through a prescription issued by a doctor in Ft. Worth, Texas. However, no evidence was adduced at trial to corroborate the fact that the seconal tablets were, in fact, issued pursuant to a legal prescription.

The record before us reflects that no written requested instructions were submitted by appellant to the court to be given to the jury. We have examined the instructions read to the jury by the court and find that they adequately state the law

as applicable to the facts of the case as well as setting forth, in substance, the theory of defense.

We therefore find no fundamental error in the instructions given the jury by the court.

Having examined the transcript, as well as the record, we find no errors of law occurring during the trial and no impropriety attached to the jury verdict. Particularly is this true since appellant made no request into the record that the punishment be fixed by the jury. See, Dodson v. State, Okl.Cr., 476 P.2d 358, at p. 361 (1970). 22 O.S.1971, § 927.

 Unquestionably, there was sufficient evidence presenting a fact question for the jury. Where there is a conflict in the testimony it is exclusive province of the jury to weigh the evidence and ferret out the truth and if there is competent evidence to support their findings, this Court will not disturb the verdict on appeal. Goodnight v. State, Okl.Cr., 366 P.2d 957; Austin v. State, Okl.Cr., 419 P.2d 569.

 Appellant's own testimony reflects that he had been previously convicted of Possession of Marijuana and had been found guilty before a jury of the offense of Grand Larceny, which conviction was being appealed. We cannot therefore say, under all the circumstances, that the sentence imposed by the trial court upon the jury's verdict was such as to shock the conscience of this Court.

Therefore, the judgment and sentence of the trial court be and the same is hereby in all respects Affirmed.

BRETT, Judge (dissenting):

I respectfully dissent to this decision. In the first instance, the prosecutor left the impression with the jury that the Texas Doctor—who defendant testified gave him the two prescriptions—was under investigation by the Texas authorities. Defendant, an admitted heroin addict, testified that he went to Fort Worth, Texas, to participate in a methadon program there, because none is offered in Oklahoma; and that the doctor there gave him a prescrip-

tion for methadon, and one for seconal, both of which were filled at a Fort Worth pharmacy. The four seconal tablets, which serve as the basis for this charge, were allegedly a part of the seconal prescription.

The record reflects on page 25, the first question asked by the prosecutor on cross-examination of the defendant was: "Isn't he the same doctor who is now under investigation by the Department of Public Safety and the Texas Rangers?" The prosecutor offered nothing to support his implication, but merely left the harpoon where it would do the most good. Defendant's objection was overruled with the explanation, that the defendant had testified "that they were registered physicians and highly respectable people."

Secondly, I believe the trial court committed prejudicial error when defendant's second witness, Janet Myers, testified. After she stated her name on direct examination, the court on its own motion next asked the witness: "Are you under the influence of narcotics?" The witness answered: "No, sir." The court then repeated the question: "You haven't had anything in the way of narcotics today?" The witness replied: "No, sir. I don't take it." There is no doubt in my mind but that the repeated question had a prejudicial effect on the jury; and, that the questions asked by the court constituted reversible error.

The single question presented in this case was: "Did the defendant have a legal prescription for the drugs?" The medicine bottles referred to in the record are not before this Court, so we are unable to ascertain whether or not they had the prescription labels on them; but there is nothing in the record to the contrary either.

With little effort the prosecutor could have verified the validity of the two prescriptions; and, I believe he should have done so. The defendant had been given probationary permission by Associate District Judge Ben LaFon of the same district court to travel to Fort Worth, for the purpose of participating in the methadon program. The Probation Officer testified

that he was aware of that permission. Consequently, I believe the prosecutor had some duty to seek out the truth and validity of the two prescriptions.

In my opinion, the fact that the defendant was granted a continuance for the purpose of taking depositions in Texas does not change the responsibilities of fundamental fairness. Some doubt exists whether or not the defendant had sufficient funds to accomplish the deposition task. At the time he was in the county jail. But be that as it may, I believe this conviction should be reversed and remanded because of the prejudicial questions asked, as mentioned above.

Therefore, I respectfully dissent to this decision.

BUSSEY, Presiding Judge (specially concurring):

Because of the dissent written in this case, it becomes imperative that a special concurring opinion be rendered. Judge Brett in his dissent asserts that the first question asked by the prosecutor on cross-examination of the defendant was improper. The record reflects that the last question propounded to the defendant on direct examination was as follows:

"Q. [By Mr. Page] One other question. Now, of your own knowledge, do you know whether or not Dr. Raburn and Dr. Carter are licensed physicians in the state of Texas?

"A. [By the defendant] Absolutely they are. They are highly respected people." (Tr. 24–25)

Thereupon, the prosecuting attorney commenced his cross-examination:

"Q. Isn't he the same doctor who is now under investigation by the Department of Public Safety and the Texas Rangers?

"A. No.

"MR. PAGE: We object, Your Honor.

"THE COURT: I think, in view of his statement that they were registered physicians and highly respected people, that any cross-examination concerning the reputation of these doctors would be admissible.

"Q. Mr. Taylor, have you ever seen his registration papers with the Department of Public Health of the State of Texas?

"A. No. I never have asked him for them.

"Q. Who have you talked to concerning him in the State of Texas?

"A. About fifteen hundred other addicts." (Tr. 25)

It is thus abundantly clear that the defendant's voluntary response that the doctors were highly respected people opened the door for the Assistant District Attorney to cross-examine the defendant concerning his knowledge of the reputations of the doctors.

I next take exception to my learned colleague's dissent wherein he stated that there was no doubt in his mind but that the repeated questions of the court of defendant's Witness Janet Myers, to-wit: "Are you under the influence of narcotics?" and "You haven't had anything in the way of narcotics today?" had a prejudicial effect on the jury and constituted reversible error. Defendant had previously testified that he was a narcotic addict and that he traveled to the State of Texas to the treatment center with another addict and that he had left part of his prescription for the barbiturates with his girl friend, Janet Myers. It would thus appear illogical that the court's questions of the witness attempting to ascertain her ability to testify would prejudice the jury against the defendant in view of his testimony on direct examination that he was an addict and associated with another addict. I further observe that the defendant's attorney did not object to the court's preliminary questions of the witness and apparently did not consider the question to be prejudicial in that he asked the witness the following questions on direct examination:

"Q. First of all then let me ask you a question and clear this matter up for

the Court and jury; are you a narcotic user?

"A. No, huhhu, I never used narcotics.

"Q. And you are most certainly not under the influence of any narcotic drug today?

"A. No." (Tr. 36–37)

I am somewhat dismayed with my learned colleague's final portion of his dissent wherein he states:

> "The single question presented in this case was: 'Did the defendant have a legal prescription for the drugs?' * * *

> "With little effort the prosecutor could have verified the validity of the two prescriptions; and, I believe he should have done so. * * *"

Judge Brett apparently has overlooked the then existing law, 63 O.S., § 418, which states:

> "In any complaint, information, or indictment, and in any action or proceeding brought for the enforcement of any provisions of this Act, [footnote omitted] it shall not be necessary to negative any exception, excuse, proviso, or exemption, contained in this Act, and the burden of proof of any such exception, excuse, proviso, or exemption, shall be upon the defendant. * * *"

The trial court in the instant case gave the defendant an opportunity to establish the defense that the prescriptions were legally obtained by continuing the case and giving the defendant an opportunity to obtain the needed testimony through the use of depositions. The defendant did not offer to introduce depositions of the pharmacist or doctors in the State of Texas nor was a further continuance requested. It appears quite ludicrous to this writer that Judge Brett would attempt to place the burden on our already over-worked police officers and prosecuting attorneys to establish an affirmative defense for a defendant when by statute the burden is placed specifically on the defendant.

For the reasons set forth by Judge Simms, I am of the opinion that the judgment and sentence should be affirmed.